## J. H. HARVEY v. R. N. BAIN.
No. 8000. Decided February 10, 1943.
(168 S. W., 2d Series, 234.)

*Keys & Holt* and *Hayden W. Head,* all of Corpus Christi, for appellant.

The purchase and sale of oil and gas leases involve interest in land and come within the purview of subsection 4 of Article 1995, R. S., and a suit for damages stands in the same catagory and is covered by the same rules as is a suit for specific performance, insofar as the statute of frauds is concerned. Clegg v. Brannan, 234 S. W. 1076; American Natl. Ins. Co. v.

Warnock, 114 S. W. (2d) 1161; J. E. Johnson Construction Company v. First National Bank of Brenham, 260 S. W. 1091.

*L. W. Sheppard* and *Bradley & Bradley,* all of Groesbeck, *Seale and Seale,* of Centerville, and *Bennett & Bennett,* of Normangee, for appellee.

When a contract between two parties is reduced to writing signed by the one and accepted by the other, it is sufficient to impress upon it the character of a written instrument, and the law and the courts will treat it as such, and the inducing promise being made in Leon County by defendant without intent to perform having been shown by the pleadings and the evidence constituted such a fraud as to give venue of the action in Leon County. Western Union Tel. Co. v. Holt, 244 S. W. 310; Wardlaw v. Pace, 66 S. W. (2d) 350; Sharp v. Mead, 127 S. W. (2d) 510.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This case is before us on certificate from the Court of Civil Appeals for the Tenth District at Waco. The appeal to that court was from an order overruling a plea of privilege. Suit was brought in the district court of Leon County by appellee Bain for himself and 59 other persons against appellant Harvey for a sum in excess of $8,000.00. The appellant timely filed his plea of privilege to be sued in Nueces County, where he resided, which plea was controverted by appellee. The only ground relied upon in the controverting plea material to the questions certified was that the defendant had contracted in writing to pay the consideration for certain mineral leases in Leon County; that the suit was upon such written contract, and that venue was therefore properly laid in Leon County under Subdivision 5, of Article 1995, as amended by Acts of 1935, 44th Legislature, Chapter 218. Under the terms of that subdivision of the statute the suit was maintainable in Leon County if appellant had contracted in writing to pay for the leases in that county.

In support of the allegation in his controverting affidavit that appellant contracted in writing to pay the consideration for the leases in Centerville, Leon County, he introduced the following instrument attached to each of the leases, the name of the lessor and the number of acres covered by his lease being stated in each case:

"Centerville, Texas
This _____ day of May, 1940.

"Centerville State Bank
Harold C. Sullivan, Cashier and Escrow Agent and
J. H. Harvey, Lessee.

"It is thoroughly understood and agreed with the undersign, a fee-simple landowner, that J. H. Harvey is desirous of leasing a block of oil, gas and mineral leases within the immediate vicinity of Centerville, Leon County, Texas, providing that he can secure as much as seven to ten thousand acres in a solid block.

"It is understood that the lessee will pay one dollar per acre for ten-year revised '88' form commercial leases calling for an annual rental of one dollar per acre, subject to good merchantable titles. It is fully understood that all leases to be taken in said block shall bear the same date of execution, which date shall be the 15th day of July, 1940. The undersign has executed an oil; gas and mineral lease in favor of the above named lessee, which lease covers the undersign's land located within the survey, Leon County, Texas, and containing _____ acres of land.

"It is mutually agreed and understood that the lessee shall have thirty days from the date of execution of said leases, which date is the 15th day of July, 1940, in which to thoroughly check all the titles to the several leases in the block. It is agreed that all leases shall be paid off by the lessee through the Centerville State Bank at Centerville, Texas, on or before the 16th day of August, 1940, unless provisions are made for excess time in which to correct any defects in titles, should such arise, and at the option of the lessee.

"The undersign agrees not to sell, convey nor transfer any of the minerals from under the land this lease covers, prior to the filing for record of said lease."

The certificate refers to the tentative opinion of the court accompanying same for a statement of the facts, and the questions certified have reference to the correctness of the views expressed in the tentative opinion of the court based upon such stated facts. They are as follows:

"The defendant drew the escrow agreement, and instructed his agent to have each lessor execute an identical agreement to be attached to his lease. The defendant solicited and procured the consent of the Centerville State Bank to act as escrow agent. The leases and escrow agreements listed in plaintiff's pleadings were executed by the landowners at the solicitation of defendant's duly authorized agent; they were accepted by such agent, and by him were placed in escrow in said bank. None of the escrow agreements were signed by defendant. Each of same was signed by the landowner whose lease was being taken by the defendant's agents. There is no evidence that defendant notified any of the landowners who signed such leases that he would not accept such leases and pay therefor; there is evidence that defendant stated to one of the landowners who was willing to execute a lease if he was paid off on July 15th, that he would like to have the lease and would like to pay off on the 15th, but August 16th was the time stipulated for payment.

"There is evidence in the record that after all the leases were executed and in the bank, the defendant negotiated with a firm in Corsicana in reference to drilling a well on the block, in consideration of a part of the acreage; and that he negotiated with another man from Houston to drill a well on a similar basis; that he stated he was going to drill a well. There is evidence that the defendant first instructed his agent to secure leases on an area of from seven to ten thousand acres; that immediately thereafter he gave instructions to add to the block until the leases which had been prepared for execution, together with others already executed, covered a total of 15,967 acres; that the defendant decided the block was too large, and gave instructions as to the leases which were to be eliminated. There is no evidence that the defendant ever notified the lessors or the escrow agent that insufficient acreage was leased, or that the leases which were executed did not cover a solid block, or that there were any defects in titles, or that he desired additional time to cure defects in titles. The defendant left Centerville on July 18, 1940, and returned on August 14, 1940. On the date last mentioned he secured delivery from the escrow agent of five of the leases, covering an aggregate of 1489.9 acres located near the center of the block, and deposited with the escrow agent, to the credit of the respective lessors, the stipulated purchase price. This was done without previous notice to the lessors whose leases were removed from escrow, and without notice to

the lessors whose leases were left in escrow. Defendant left Centerville on the same day that he obtained delivery of the leases above mentioned, and has not since been seen or heard from by any of the interested parties who testified."

The questions certified are as follows:

"Under the facts stated, were we in error in holding:

"(1) That the facts are sufficient to constitute an acceptance by the defendant, acting by his duly constituted agent, of the various contracts in writing sued on?

"(2) That under the facts stated, each of the written contracts sued on, signed by the owners of the land to which the same pertain but not signed by the defendant, and imposing on the latter the sole obligation of paying for the mineral interest being conveyed to him, on acceptance by the defendant, became a contract in writing within the purview of Subdivision 5, Article 1995, Revised Civil Statutes?

"(3) That under the facts stated, said contracts are not within the Statute of Frauds (Article 3995, Revised Civil Statutes) and are enforceable against the defendant?

"(4) That under the facts stated, the contracts sued on were not mere options of purchase, but bound the defendant to pay the consideration recited to each lessor subject to the conditions therein set forth?

"(5) That under the facts stated, the question of whether or not the conditions set forth in the contracts were complied with or were waived by defendant, became relevant only as to the ultimate liability of defendant, and not to any essential issuable venue fact?"

It does not appear to be necessary that we answer these questions categorically. Our consideration will be directed primarily to Questions 1 and 5.

From the certificate and the opinion accompanying same we take it that upon the hearing of the plea of privilege appellee did not make proof of the fact that leases were procured on as much as 7,000 acres of land in a solid block, and we answer the questions upon that basis.

■ The escrow contracts were signed only by the landowners. Venue was sustained as laid in Leon County under Subdivision 5, not upon the ground that appellant executed a written contract obligating him to pay for the leases in Leon County, but upon the ground that he accepted the contracts which had been reduced to writing and signed by the landowners, and that such acceptance brought him within the purview of Subdivision 5. This is made manifest by the following language taken from the opinion of the Court of Civil Appeals:

"We overrule the assignments raised by the above mentioned points. The rule is that a contract reduced to writing, signed by one party, and accepted by the other, is a contract in writing within the purview of subdivision 5, Article 1995, Revised Civil Statutes. Haynes v. Gilsonite Construction Co., 298 S. W. 640; Copeland v. Hill, 126 S. W. (2d) 567.

"We are further of the opinion that the escrow agreements on which the suit is predicated, being in each case signed by the landowner and accepted by the lessee, are not subject to the objection that they are within the Statutes of Frauds (Article 3995, Revised Civil Statutes). This case comes within the rule that a written contract, signed by the vendor and accepted, though not signed by the purchaser, is not within the Statute of Frauds and is therefore enforceable in an action against the purchaser. Clegg v. Brannan, 234 S. W. 1076, 1078; Stout v. Oliveria, 153 S. W. (2d) 590, point 9; Martin v. Robers, 57 Texas 564; Dansby v. Stroud, 48 S. W. (2d) 1018."

The burden was upon the appellee to prove, as a venue fact, in order to bring his case within the rule relied upon, that the appellant accepted these escrow contracts, and not merely to prove that he should have accepted them. But as we understand the certificate and accompanying opinion appellee not only failed to show that appellant accepted the contracts, but failed also to show that he ever became obligated to accept them, there being no showing that the landowners met the condition of furnishing leases on at least 7,000 acres in a solid block.

The Court of Civil Appeals regarded the question of whether this condition of the contract was met as bearing only on the merits of the controversy. We quote from its opinion as follows:

"* * It is true that the obligation of the defendant to pay was subject to the condition that leases be secured within the

specified area or from seven to ten thousand acres in a solid block, and was further subject to the title requirements set forth in the contract. However, the question of whether or not these conditions were met, or were waived by defendant, has a bearing only on the merits of the controversy, that is, the ultimate liability of defendant to pay. The venue of the suit is not conditioned on the securing of the requisite number of acres in a solid block, or on any question of title to the acreage secured. In our opinion, the plaintiff's evidence established the essential venue facts prescribed by subdivision 5, Article 1995, Revised Civil Statutes, to-wit: written obligations of the defendant performable in Leon County, Forum v. Prince, 97 S. W. (2d) 1002."

■ Therein, under our view, the court is in error. It is the rule that in an action on a written obligation performable in the county where suit is filed, matters which go only to the merits of the action will not be inquired into in a hearing on the question of venue only. Bradley v. Trinity State Bank 118 Texas 274, 14 S. W. (2d) 810; Camp v. Bond, Chief Justice, 134 Texas 678, 139 S. W. (2d) 77. But that is not the nature of the case before us. This is not a suit upon an obligation in writing executed by the appellant. Appellee seeks to place appellant in the position of one who executed a contract in writing performable in Leon County by establishing the fact by extraneous evidence that he accepted the escrow contracts signed by the landowners and thereby assumed the obligations thereof. To apply to appellant the rule which is applicable only to one who has executed a contract in writing would, it seems to us, be to assume the very question at issue. It must be established that he assumed the obligations of the escrow contracts before the rule could operate against him.

■ Even in a case where suit is brought upon a written instrument which on its face recites that the obligation thereof is performable in the county where suit is brought, the burden is upon the plaintiff, under a proper plea of privilege, to establish that the defendant actually executed the instrument. Formerly this burden was cast upon the plaintiff by a plea of privilege in statutory form, which was given the effect of a plea of non est factum. Johnson v. Dallas Cooperage & Woodenware Co. 120 Texas 27, 34 S. W. (2d) 845; Berry v. Pierce Petroleum Corporation, 120 Texas 452, 39 S. W. (2d) 824; Jones Fine Bread Co. v. Smith, 136 S. W. (2d) 234 and authori-

ties there cited. That rule has now been changed to the extent that the defense of non est factum must be specially pleaded in order to cast that burden on plaintiff on a venue hearing. Acts of 1939, 46th Leg. p. 204, Sec. 1; Rule 86, Rules of Civil Procedure. That change, however, did not have the effect of modifying the rule that the issue of whether a defendant executed the obligation declared upon is a venue fact. The change was merely as to the character of pleading required to put that fact in issue. In this case no plea of non est factum was called for because the suit was not upon a written instrument alleged to have been executed by appellant. Had the suit been one of that nature, the venue fact to be established would have been that appellant executed the instrument. By a parity of reasoning, the venue fact to be established in this proceeding is that appellant assumed the obligations of the instruments executed by the landowners and thereby made them his own. In order to show that fact appellee was required to show that the conditions upon which same were placed with the escrow agent had been met by the landowners, for the obligations must have come into existence before they could have been assumed.

Another condition of liability was that the titles meet specified requirements. It appears from the certificate and opinion that there was a sufficient showing that this condition was met and for that reason no attention has been given thereto in this opinion.

It is thought that the views above expressed answer the controlling questions certified.

Opinion adopted by the Supreme Court February 10, 1943.