## HARVEY v. BAIN.
### No. 2406.

Court of Civil Appeals of Texas. Waco.

March 11, 1943.

Rehearing Denied March 25, 1943.

See, also, Tex.Com.App., 168 S.W.2d 234.

Keys, Holt & Head, of Corpus Christi, for appellant.

Seale & Seale, of Centerville, and L. W. Shepperd and Bradley & Bradley, all of Groesbeck, and Bennett & Bennett, of Normangee, for appellee.

RICE, Chief Justice.

This is an appeal from an order overruling a plea of privilege. Suit was brought in the District Court of Leon County, Texas, by R. N. Bain, for himself and fifty-nine other persons, to recover of defendant J. H. Harvey the sum of $8,349.43, on the theory that defendant had promised in writing to pay plaintiff and the others for whose benefit the suit was brought, through the Centerville State Bank of Centerville, Texas, one dollar per acre for oil leases executed by said parties covering tracts of land owned by said parties, respectively, aggregating 8,349.45 acres of land situate in Leon County, Texas; and in the alternative, for damages in said amount because of fraud practiced by defendant.

Defendant timely filed his plea of privilege to be sued in Nueces County, where he resided; thereupon plaintiff, for himself and the other interested parties, filed his controverting affidavit. Therein he refers to and makes his original petition a part of his controverting affidavit, and seeks to retain venue in Leon County: (1) because he says the defendant contracted in writing to pay the consideration for such leases in Leon County; (2) because the defendant perpetrated a fraud on plaintiff and those for whose benefit this suit was brought, in Leon County, Texas, in that: defendant represented to the various lessors that he would take each of the leases in question in a block, paying therefor at the rate of one dollar per acre, and would drill a well for oil on one of the leases in such block, which promises were relied on by plaintiff; that defendant did not intend to keep such promises but made the same in order to induce the plaintiff landowners to execute the leases and to deliver the same to the Centerville State Bank, in order that defendant might take out and pay for at one dollar per acre those leases best

located geologically; that defendant did fraudulently take out of said bank and pay for at one dollar per acre five of the leases best located geologically, and refused to take out of said bank and pay for the remaining leases, or to drill a well on one of the leases in said block. The owners of the five leases above mentioned are not parties to this suit.

On the trial of the issues joined by the plea of privilege and controverting affidavit, the defendant did not testify, nor did he introduce any evidence.

Defendant contends that the court committed error in overruling his plea: (1) because plaintiff pleaded in his petition and controverting affidavit the execution of written contracts by the "authorized agent of the defendant," and the proof showed no execution of such contracts by the defendant, or anyone acting for him; (2) because the instruments sued on involve the purchase and sale of an interest in land (oil and gas leases), and, being unexecuted by defendant, or anyone acting for him, the same were unenforceable because in violation of the Statute of Frauds (Art. 3995, Revised Civil Statutes); (3) because the plaintiff sought to modify by parol the terms of the written instruments sued on, thereby bringing the entire transaction within the Statute of Frauds and rendering the same unenforceable; (4) because the instruments sued on were mere options to purchase, unaccepted by defendant; and (5) because the conditions expressed in the instruments sued on were not shown to have been complied with.

Plaintiff's petition alleges the execution of the contracts in writing by the authorized agent of the defendant, and it is alleged in his controverting affidavit that "defendant contracted in writing to pay the consideration for the oil and gas leases through the Centerville State Bank of Centerville, Texas." In support of this allegation he introduced the following contract attached to each of the leases, except that the name of lessor and number of acres covered thereby varied with each lease:

"Centerville, Texas

"This —— day of May, 1940.

"Centerville State Bank

"Harold C. Sullivan, Cashier and Escrow Agent and J. H. Harvey, Lessee.

"It is thoroughly understood and agreed with the undersign, a fee-simple landowner, that J. H. Harvey is desirous of leasing a block of oil, gas and mineral leases within the immediate vicinity of Centerville, Leon County, Texas, providing that he can secure as much as seven to ten thousand acres in a solid block.

"It is understood that the lessee will pay one dollar per acre for ten-year revised '88' form commercial leases calling for an annual rental of one dollar per acre, subject to good merchantable titles. It is fully understood that all leases to be taken in said block shall bear the same date of execution, which date shall be the 15th day of July, 1940. The undersign has executed an oil, gas and mineral lease in favor of the above named lessee, which lease covers the undersign's land located within the —— survey, Leon County, Texas, and containing —— acres of land.

"It is mutually agreed and understood that the lessee shall have thirty days from the date of execution of said leases, which date is the 15th day of July, 1940, in which to thoroughly check all the titles to the several leases in the block. It is agreed that all leases shall be paid off by the lessee through The Centerville State Bank at Centerville, Texas, on or before the 16th day of August, 1940, unless provisions are made for excess time in which to correct any defects in titles, should such arise, and at the option of the lessee.

"The undersign agrees not to sell, convey nor transfer any of the minerals from under the land this lease covers, prior to the filing for record of said lease."

The defendant drew the escrow agreement, and instructed his agent to have each lessor execute an identical agreement to be attached to his lease. The defendant solicited and procured the consent of the Centerville State Bank to act as escrow agent. The leases and escrow agreements listed in plaintiff's pleadings were executed by the landowners at the solicitation of defendant's duly authorized agent; they were accepted by such agent, and by him were placed in escrow in said bank. There was no showing that the aforesaid leases covered at least 7,000 acres in a solid block. None of the escrow agreements were signed by defendant; each of same was signed by the landowner whose lease was being taken by the defendant's agents. There is no evidence that defendant notified any of the landowners who signed such leases that he would not accept such leases and pay therefor; there is evidence that defendant stated to one of the landowners who was willing to execute a lease

if he was paid off on July 15th, that he would like to have the lease and would like to pay off on the 15th, but August 16th was the time stipulated for payment.

There is evidence in the record that after all the leases were executed and in the bank, the defendant negotiated with a firm in Corsicana in reference to drilling a well on the block, in consideration of a part of the acreage; and that he negotiated with another man from Houston to drill a well on a similar basis; that he stated he was going to drill a well. There is evidence that the defendant first instructed his agent to secure leases on an area of from seven to ten thousand acres; that immediately thereafter he gave instructions to add to the block until the leases which had been prepared for execution, together with others already executed, covered a total of 15,967 acres; that the defendant decided the block was too large, and gave instructions as to the leases which were to be eliminated. There is no evidence that the defendant ever notified the lessors or the escrow agent that insufficient acreage was leased, or that the leases which were executed did not cover a solid block, or that there were any defects in titles, or that he desired additional time to cure defects in titles. The defendant left Centerville on July 18, 1940, and returned on August 14, 1940. On the date last mentioned he secured delivery from the escrow agent of five of the leases, covering an aggregate of 1489.9 acres located near the center of the block, and deposited with the escrow agent, to the credit of the respective lessors, the stipulated purchase price. This was done without previous notice to the lessors whose leases were removed from escrow, and without notice to the lessors whose leases were left in escrow. Defendant left Centerville on the same day that he obtained delivery of the leases above mentioned, and has not since been seen or heard from by any of the interested parties who testified.

Appellant's contentions hereinabove set forth were presented by certificate to the Supreme Court for determination, and on February 10th the Supreme Court answered certain questions of law involved in this case and in connection therewith said: " * * * the venue fact to be established in this proceeding is that appellant assumed the obligations of the instruments · executed by the landowners and thereby ·made them his own. In order to show that fact appellee was required to show that the conditions upon which same were placed with the escrow agent had been met by the landowners, for the obligations must have come into existence before they could have been assumed." [168 S.W.2d 234, 237.] The Supreme Court further held from the facts before it, that "appellee not only failed to show that appellant accepted the contracts, but failed also to show that he ever became obligated to accept them, there being no showing that the landowners met the condition of furnishing leases on at least 7000 acres in a solid block."

The appellee having failed to establish the venue fact essential to maintain this suit in Leon County, the judgment overruling the plea of privilege must be reversed and rendered and the cause of action asserted against appellant transferred to the District Court of Nueces County, ,Texas, as provided in Rule 89, Vernon's Rules of Civil Procedure.