**BIRCHMINSTER RESOURCES, Appellant,**

v.

**CORPUS CHRISTI MANAGEMENT COM-PANY, Appellee.**

No. 794.

Court of Civil Appeals of Texas, Tyler.

Dec. 12, 1974.

Rehearing Denied Jan. 9, 1975.

Ramey, Flock, Hutchins, Grainger & Jeffus, Sam B. Cobb, Jr., Mike A. Hatchell, Tyler, for appellant.

Sorrell, Anderson & Sorrell, William R. Anderson, Jr., Richard W. Crews, Jr., Corpus Christie, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from an order sustaining appellee's plea of privilege. Appellant-plaintiff Birchminster Resources (Birchminster) sued appellee-defendant Corpus Christi Management Company (CCM) in Smith County to recover sums alleged to be due under a written contract for the drilling of an oil or gas well in Starr County. CCM filed a plea of privilege to be sued at its domicile, Nueces County. Birchminster filed a controverting affidavit pursuant to Subdivision 5, Article 1995, Vernon's Ann.Tex.Civ.St., maintaining that the suit was upon a valid contract in writing performable in Smith County. The trial court granted the plea of privilege and ordered the cause to be transferred to Nueces County. We affirm.

Prior to February 1, 1974, Charles Birch, drilling superintendent for Birchminster, discussed with Stanley Coen, a consulting engineer for CCM, the possibility of Birchminster drilling oil and gas wells for CCM on its lease premises in Starr County, Texas. Pursuant to that conversation, Birchminster's superintendent prepared a written contract and forwarded it to Coen in care of CCM. Upon receipt of the proposed written contract, Coen contacted Birch and

made statements to the effect that although the terms of the contract were all right, CCM preferred using an International Association of Drilling Contractors' (IADC) standard form contract. Coen sent Birchminster a copy of an IADC contract which CCM had used on another job, marking the sample contract by crossing out and adding appropriate names and designations. The "marked-up" copy of the IADC contract which CCM had used on another job was introduced into evidence as Plaintiff's Exhibit Number 1. Plaintiff's Exhibit No. 1 and all standard form IADC contracts have a clause, Sec. 27, which states:

"27. ACCEPTANCE OF CONTRACT:
"This instrument shall not become a binding contract until Owner has noted its acceptance and Owner shall be under no obligation to Contractor until such acceptance has been noted and a fully executed copy of this agreement sent to Contractor. Contractor will sign all copies of this instrument and return all but one signed copy to Owner.
Owner _____
By _____
"The foregoing contract is accepted by the undersigned as contractor this _____ day of _____, 19___, subject to rig availability, and subject to all of its terms and provisions, with the understanding that it will not be binding upon Owner until Owner has noted its acceptance, and with further understanding that unless said contract is thus executed by Owner within _____ days of the above date Contractor shall be in no manner bound by its signature thereof.
Contractor _____
By _____
Title _____
Accepted this _____ day of _____
_____, 19___, which is effective date of this agreement.
Owner _____
By _____
Title _____"

Birchminster secured blank copies of the IADC standard form contract which contained exactly the same provisions as Plaintiff's Exhibit No. 1, had its secretary fill out duplicate originals in accordance with Plaintiff's Exhibit No. 1, and sent two copies to CCM. The purported duplicate original contracts were received by CCM, but were never signed by the company. In its petition, Birchminster did not allege that CCM had executed the contract.

Although the facts are somewhat unclear, the testimony reveals that Birchminster moved its rig onto the well-site and commenced drilling on about February 1, which was either about the same time or about four or five days before Birchminster mailed the duplicate original contracts. On or about February 13, 1974, during the course of drilling operations, a blow-out occurred. Shortly thereafter, CCM ordered Birchminster to remove its rig from the location. Thus, Birchminster had performed various drilling operations for about thirteen days. Although there is some dispute between the parties, the testimony reveals that between five to ten days of work had been completed before CCM received the duplicate original contracts and that the work continued from three to eight days after CCM had the duplicate original contracts in its possession. Testimony shows that CCM had a mud logger and consulting engineers present during the drilling operations and that Coen might have been present.

In response to appellant's request, the trial court made the following pertinent findings of fact:

A. Prior to commencement of drilling operations on the oil well in question, Birchminster's drilling superintendent and Coen entered into negotiations in contemplation of Birchminster drilling a well for CCM.

B. The oral negotiations led to a preparation of a form of written contract by Birchminster which was forwarded to Coen in care of CCM.

C. Coen contacted Birchminster's drilling superintendent and informed him that an alternative form of written contract would be required.

D. The alternative form of written contract, which was forwarded by Coen to Birchminster, was a "marked-up" copy of another drilling contract and is in evidence as Plaintiff's Exhibit Number 1.

E. Birchminster prepared and executed a written contract in the form submitted by Coen and sent it to CCM for execution.

F. The form of contract prepared and executed by Birchminster was in the terms and form suggested by Coen.

G. Birchminster moved onto the well site and commenced drilling operations after the terms of the contract had been agreed upon, but before it was executed by CCM, as was required by Sec. 27 of Plaintiff's Exhibit No. 1.

H. CCM never executed the written contract.

As a conclusion of law, the trial court stated that "Contracting parties, if they so desire, have a right to contract that a written instrument shall not become a binding contract until both parties, or one party, has signed or noted his acceptance thereto." The trial court concluded, as a matter of law, that Plaintiff's Exhibit No. 1 failed to satisfy the venue requirements of Subdivision 5, Article 1995, V.A.T.S.

■ The general rule of venue is that a defendant must be sued in the county of his domicile. In order to defeat defendant's plea of privilege to be sued in the domiciliary county, the burden is on the plaintiff to allege and prove by a preponderance of the evidence that the case comes within some well-defined statutory exception to Article 1995, V.A.T.S., before one may be deprived of the right to defend a suit against him in the county of his residence. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91 (Tex.Comm. of App., 1935, holding approved); Berry v. Pierce Petroleum Corporation, 120 Tex. 452, 39 S.W.2d 824 (Tex.Comm. of App., 1931, holding approved); Admiral Motor Hotel of Texas, Inc. v. Community Inns of America, Inc., 389 S.W.2d 694 (Tex.Civ.App., Tyler, 1965, n. w. h.).

The venue facts under Article 1995, Subdivision 5, that are at issue in the present case require: (1) that the claim is based on a written contract, and (2) that the contract was entered into by the defendant or by one authorized to bind him, or was assumed or ratified by him. McDonald Civil Practice Sec. 4.11.1, p. 444.

■ Appellant contends that Sec. 27 was not a condition precedent to the written contract. Where parties to a written contract intend that it shall not be binding until it is signed by the parties, the signatures of both parties are required to give effect to the contract. Simmons and Simmons Construction Co. v. Rea, 155 Tex. 353, 286 S.W. 2d 415, 418, 419 (1956); Ives v. Urban, 385 S.W.2d 608 (Tex.Civ.App., Corpus Christi, 1964, writ ref'd, n. r. e.).

■ Where the trial court makes and files findings of fact, which have support in the evidence, such findings are binding on the reviewing court, and, in passing on such question, the reviewing court must consider only the evidence favorable to the findings and reject all evidence to the contrary. Campbell v. Swinney, 328 S.W. 2d 330 (Tex.Civ.App., Dallas, 1959, writ ref'd, n. r. e.); Rodriguez v. Garcia, 309 S.W.2d 509 (Tex.Civ.App., San Antonio, 1958, no writ). Also 4 Tex.Dig., Appeal & Error 1010, Subdivision 1.

The trial court found in its findings of fact that CCM had never executed the written contract as was required by Sec. 27 of Plaintiff's Exhibit No. 1.

The evidence shows that CCM had neither noted its acceptance to Plaintiff's Exhibit No. 1 or any of the purported duplicate original contracts nor sent a fully executed copy of the agreement to Birchminster, as was required by Sec. 27 of the IADC contract. Moreover, a partner of Birchminster testified that Birchminster had already moved onto the drill site when Birchminster sent the purported written contract that was prepared in the terms and forms suggested by Plaintiff's Exhibit No. 1. The partner stated that Birchminster moved onto the well-site on about February 1, and that Birchminster received Plaintiff's Exhibit No. 1 on about February 4 or February 5 and that Birch-

minster typed up two contracts and sent them both to CCM. The Assistant Vice President of CCM testified that the instrument, which was prepared by Birchminster and was in the terms and form suggested by Plaintiff's Exhibit Number 1, had just arrived when he learned of the blow-out and that Birchminster had been on the well-site for ten days before CCM received the written instrument sent by Birchminster. Also the Assistant Vice President of CCM testified that he did not believe that Coen had ever hired a drilling contractor to drill a well for CCM before because "everything in the company was cleared through Mr. McKellip (the President of CCM), since it was his hundred per cent money being used in all these operations * * *."

■ After considering only the evidence favorable to the findings of the trial court, we hold that the trial court's finding that CCM never executed the written contract, as was required by Sec. 27, has support in the evidence. Therefore, we are bound by the trial court's finding.

■ Appellant also contends that there was a contract in writing sufficient to satisfy Subdivision 5 because it was signed by Birchminster and accepted by the words and conduct of CCM. The venue fact to be established in this proceeding is that appellee assumed the obligations of the contract executed by appellant and thereby made the obligations its own. In order to show that fact, Birchminster was required to show that the conditions upon which the contract was based had been satisfied by CCM. It must have been shown that an obligation came into existence before it could have been assumed. Collins v. F. M. Equipment Company, 162 Tex. 423, 347 S.W.2d 575, 582 (1961); Harvey v. Bain, 140 Tex. 375, 168 S.W.2d 234 (Tex.Comm. of App.1943, opinion adopted). The evidence supports the finding of the trial court that the conditions, as required by Sec. 27, had not been met. Therefore, the purported written contract

never came into existence. Appellant has failed to discharge the burden of proving as a venue fact that the appellee accepted the written contract. It is not sufficient to prove that appellee should have accepted it. Collins v. F. M. Equipment Co., supra, 347 S.W.2d 587.

Furthermore, in Hurst and Globe Roofing & Sheet Metal v. Rush, 514 S.W.2d 472, 474 (Tex.Civ.App., Beaumont, 1974, n. w. h.), the court held that in order to satisfy the venue requirement of Subdivision 5, the assumption or ratification of a contract by the defendant must be done in writing. In the case at bar, appellant did not allege that appellee assumed the contract in writing. Appellant merely alleged that appellee accepted the contract by its words and conduct.

■ Finally, appellant contends that if Sec. 27 were a condition precedent, it was waived. In addition to the evidence already discussed, Sec. 20 of the standard form IADC contract states:

"20. NO WAIVER EXCEPT IN WRITING:

"It is fully understood and agreed that none of the requirements of this contract shall be considered as waived by either party unless the same is done in writing, and then only by the persons executing this contract, or other duly authorized agent or representative of the party."

"A waiver must be pleaded, and, unless pleaded, cannot be urged for the first time on appeal." Western Union Telegraph Co. v. Janko, 212 S.W. 243, 245 (Tex.Civ.App., Galveston, 1919, writ ref'd.). Appellant did not sufficiently plead waiver in either its original petition or its controverting affidavit.

■ The burden imposed on the appellant in the instant case is one the courts have predicated upon the belief that the defendant's right to be sued in a county

of his domicile is an invaluable right and this right should be vitiated only when the evidence clearly supports the maintenance of venue in some other county. The right to be sued in one's own domicile is a right jealously guarded by the courts and exceptions to the venue statute must clearly appear. Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S.W.2d 969, 972 (1951); Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825 (1950). Unless the plaintiff clearly discharges his burden by proof, the defendant is entitled to have the case transferred to the county of his domicile. Calhoun v. Padgett, 409 S.W.2d 890, 893 (Tex.Civ.App., Tyler, 1966, n. w. h.); Reynolds & Huff v. White, 378 S.W.2d 923 (Tex.Civ.App., Tyler, 1964, n. w. h.).

For the reasons mentioned, we affirm the order of the trial court granting the plea of privilege.