NO. 07-09-0213-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 31, 2010

_____


WEST TEXAS HOSPITALITY, INC. D/B/A
ENERSERV CONSULTANTS, APPELLANT

v.

ENERCON INTERNATIONAL, INC.
AND PAUL SAXTON, APPELLEES

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-545,369; HONORABLE WILLIAM SOWDER, JUDGE

_____


Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**


Appellant, West Texas Hospitality, Inc. d/b/a WTH Consultants ("WTH"), appeals the trial court's order issued in favor of Appellee, Enercon International, Inc. and Paul Saxton (collectively "Enercon") dismissing WTH's suit based upon a forum selection clause in a written contract. In a single issue, WTH asserts the trial court erred in its

finding that there was an enforceable written contract between the parties. We reverse and remand for further proceedings consistent with this opinion.

## Background

In February 2008, WTH[1] filed its Original Petition alleging Enercon[2] wrongfully retained monies paid by WTH in anticipation of execution of a written contractual agreement. WTH asserted actions for conversion, collection, and quantum meruit/unjust enrichment. In its Amended Special Appearance, Motion to Dismiss, and Original Answer filed in January 2009, Enercon sought to dismiss WTH's suit based upon a forum-selection clause contained in a written agreement which required any suit to be filed in Minnehaha County, South Dakota. WTH responded by contending that there was no written agreement because Enercon never signed the proposed contract as presented by WTH. In support of their respective arguments, the parties submitted evidence through affidavits and exhibits attached to their pleadings.

In January 2008, WTH approached Enercon asking for a proposed contract to review. Enercon offered its "Authorized Affiliate Agreement" ("Agreement"). Among other things, the Agreement provided that WTH would pay $43,900 to Enercon[3] in return for the right to sell Enercon products throughout the United States on a non-

---

[1] WTH is a Texas corporation doing business in Lubbock County, Texas. Kirit Desai, WTH's President, resides in Lubbock County.

[2] Enercon is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota. Paul Saxton, Enercon's President, resides in Ohio.

[3] Enercon's proposed Agreement required that WTH pay Enercon two installments equaling $43,900.

2

exclusive basis in addition to receiving training, customer support, a demonstration kit, startup quantities of Enercon's promotional materials and a "product credit" up to $45,000. WTH's "product credit" would be used on materials and services purchased from Enercon for projects approved by Enercon within 120 days of completion of WTH's initial training. The Agreement also provided, in pertinent part, as follows:

14. **CHANGES TO AGREEMENT:** This agreement may not be changed except by written consent of all parties and may not be changed orally.

16. **ACCEPTANCE OF CONTRACT AND EXECUTION DATE:** [WTH] shall sign duplicate originals of the Agreement and submit both originals with full payment to [Enercon]. Should [Enercon] reject the Agreement, [WTH] will be notified of such fact in writing and full payment shall be returned promptly. Should [Enercon] accept the agreement, [Enercon] will date and sign the duplicate originals of the agreement submitted and return one of the fully executed originals for [WTH] at [WTH's] address shown above. The Agreement shall be binding upon all parties the date [Enercon] dates and signs the duplicate originals, which shall be the "execution date of the Agreement." [WTH] shall have a right of rescission for three days from the date of the agreement.

18. **SOLE AGREEMENT:** There are no other agreements or understandings, either oral or in writing between the parties effecting this agreement or relating to the sale of the Product(s), except as otherwise specifically provided herein . . . . This agreement contains all the oral written agreements, representations and arrangements between the parties hereto. It is understood between the parties that there are no representations or warranties made or implied except as specifically set forth herein.

21. **SUIT VENUE:** This agreement is performable in Minnehaha County, South Dakota. Any claim, cause of action, or other legal suit arising from, or as a result of this agreement shall be brought in State Court in Minnehaha County, South Dakota . . . .

24. **EXECUTION KNOWING AND VOLUNTARY:** The parties hereby acknowledge and represent that they (a) have fully and carefully read this agreement prior to execution; (b) have been, or have had the opportunity to be fully apprised by any attorneys of their choice of the legal effects and meaning of this document and all terms and conditions hereof, . . . (d) are executing this agreement with full knowledge of the ramifications thereof.

3

30. **SUPERCEDE:** This contract supercedes and replaces any previous contract or agreement between the parties herein.

The Agreement also contained two signature blocks, one each for Enercon and WTH. Each signature block was prefaced by the statement "Accepted by [Enercon]" and "Accepted by [WTH]," respectively.

Kirit Desai, on behalf of WTH, made a number of handwritten changes to the proposed contract. Specifically, he extended the time within which Enercon was required to apply WTH's "product credit" from 120 days to 150 days of completion of WTH's initial training. He also amended the Agreement's terms regarding termination as follows: "This agreement may also be terminated by circumstances beyond [Enercon's] control that make it impossible or impractical for the business activities contemplated by this agreement to be continued*, in which case the remaining balance from the payments made will be refunded if termination happens within 150 days from the payment.*" (Emphasis supplied on handwritten changes). In addition, Desai amended a number of the time-specific provisions in the termination paragraph to make ten day time limits, ten *business* days. (Emphasis supplied on handwritten changes).

On March 3, 2008, Desai signed the modified contract and, on March 4, wired his first installment of $26,000. The following day, Enercon received the modified contract signed by WTH and invoiced WTH for $43,900.[4] Prior to making their second

---

[4]The invoice stated "$43,900 for 1 HiBrite Dealership - HiBrite dealership NON EXCLUSIVE, Out-of-state sale, exempt from sales tax."

4

installment payment, WTH ordered $5,000 worth of Enercon products. Enercon responded by invoicing WTH for "HiBrite Fixtures, Lamps, Retro Kit and freight, $5002.75," and stamped the invoice "PAID."

On April 7, Desai sent an internal e-mail to another WTH officer, and expressed concern that they had "not received a signed copy of [their] agreement with Enercon." Desai wanted to start a countdown of the number of days remaining to recover their $43,900 from Enercon, i.e., "[h]ow much time we have left and how much sales we have to generate within that time."

On April 7, Enercon and WTH exchanged a number of e-mails related to the deadline for WTH's "product credit." Paul Saxton sent an e-mail to Desai indicating that WTH's "product credit" was good for 120 days from completion of WTH's initial training. In response, Desai indicated that he had altered the Agreement as tendered by Enercon to permit WTH 150 days on the "product credit" deadline. Desai also indicated that his calculations indicated the "product credit" would not expire until August 18 and asked Saxton to verify there was a $42,000 "product credit" remaining. Saxton responded to Desai saying: "Did I sign that? I don't recall . . . I don't know why this would have been changed as we already increased it to 120 days from the usual 90 days."

On May 6, WTH made a second installment payment to Enercon, deducting $5,002.75 for the products purchased in March. WTH also requested Enercon's services to design projects and Enercon invoiced WTH for their services.[5]

In August, WTH had yet to receive an executed copy of the Agreement as amended by Desai and the deadline was approaching for WTH's use of its "product credit." On August 4, Desai sent an e-mail to Saxton indicating that the "product credit" deadline was approaching and asked for an extension to complete a project and close on others. Saxton responded he had checked the Agreement and the "product credit" deadline of 120 days had already expired. Desai responded by sending a copy of his amendments to the Agreement and asserted that the "product credit" deadline of 150 days had not expired. Desai's calculations indicated that WTH had until August 18 to use the remaining credit of $42,000.[6]

On August 25, Desai received a letter from Enercon's attorney stating, in pertinent part, as follows:

> I am writing with regard to invoices/purchase orders you recently sent to our client. My client is unable to fill the orders as submitted on your desired terms for three reasons.

_____

[5]These invoices were as follows: (1) dated August 27 and stamped PAID, $400 for 1 Survey Fee United Supermarket Out-of-state sale, exempt from sales tax; (2) dated August 28 and stamped PAID, $400 for Sonic Drive-In survey, Out-of-state, exempt from sales tax; (3) dated May 21 and stamped PAID, $400, 1 Survey Fee, Shamrock Chevrolet Survey, Out-of-state, exempt from sales tax; and (4) dated May 21 and stamped PAID, $400, 1 Survey Fee, Survey Fee Gene Messer, Out-of-state, exempt from sales tax.

[6]The record also contains two e-mails between Desai and Nelsi Rodriquez, an Enercon employee. Desai sent Rodriquez an e-mail stating: "I am sorry I should have called you to let you know that I found my copy [of the Agreement] on my computer. Thanks for your help." Rodriquez responded: "I take that you no longer need the affiliate agreement, you found it?"

First, as my client noted in prior correspondence, the invoices/purchase orders you submitted were submitted outside of the 120-day-product-credit window set forth in the Enercon Affiliate Agreement as it was offered to you. The unauthorized alterations you made to the Agreement that you signed were not effective to extend this period.

Second, as noted in the Affiliation Agreement, your product credit must be used "only on complete Enercon approved, engineered, and designed products." The document you have submitted are for products and quantities vastly different from those approved by my client.

Third, your orders involve at least one entity that my client has never heard of and therefore could not have possibly approved.

My client therefore cannot provide these materials as currently requested on a product-credit basis.

Following submission of the parties' pleadings and exhibits, the trial court heard counsel's argument in a short hearing on Enercon's motion to dismiss. Enercon acknowledged that it did not sign the Agreement but asserted WTH was bound by its terms because WTH had signed. Although the Agreement signed by WTH contained Desai's changes, Enercon contended WTH performed under *their* Agreement without the changes made by Desai. WTH contended the contract signed by Desai and returned to Enercon was a counter-offer that was not accepted because it was never signed by Enercon. WTH asserted that, because the counter-offer was not executed by Enercon, there was no written agreement between the two companies and the forum selection clause was unenforceable.

Thereafter, the trial court entered its order denying Enercon's Special Appearance and granting Enercon's motion to dismiss stating "[t]his dismissal is based upon the forum selection clause contained in the Authorized Affiliate Agreement between the parties." This appeal followed.

7

**Standard of Review**

A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause against a party to the contract who violated the clause in filing suit. *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 626 (Tex.App.--Texarkana 2008, pet. denied). While we review the trial court's ruling on a motion to dismiss for abuse of discretion; s*ee In re Lyon Fin. Servs.,* 257 S.W.3d 228, 231-32 (Tex. 2008) (*per curiam),* to the extent that our review involves the construction or interpretation of an unambiguous contract, the standard of review is *de novo. Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.,* 177 S.W.3d 605, 610 (Tex.App.--Houston [1st Dist.] 2005, no pet.). This is so because "a trial court has no 'discretion' in determining what the law is or applying the law to the facts"; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), and "abuses its discretion" if it misinterprets or misapplies the law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008).

**Forum-selection Clause**

The trial court's order does not contain a specific finding of the existence of a written agreement, nor did the trial court make findings of fact and conclusions of law. However, as the parties' briefs make clear, the trial court's order of dismissal clearly rests on the legal conclusion that WTH is bound to the forum-selection clause in the Agreement on which Enercon relies.

As the party seeking to enforce a contractual forum-selection clause, Enercon had the initial burden of establishing that it and WTH agreed to an exclusive forum and the agreement applied to WTH's claims. *Phoenix Network*, 177 S.W.3d at 611-12 & n.6.

*See Barnett v. Network Solutions, Inc.,* 38 S.W.3d 200, 203 (Tex.App.--Eastland 2001, pet. denied).[7] If Enercon met these prerequisites, the burden would then shift to WTH to make a "strong showing" overcoming the *prima facie* validity of the forum-selection clause. *Phoenix Network*, 177 S.W.3d at 611.

To establish the existence of an enforceable contract, a party must prove (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter and essential terms of the contract, and (4) consideration, or mutuality of obligations. *See Domingo v. Mitchell,* 257 S.W.3d 34, 39 (Tex.App.--Amarillo 2008, pet. denied). In determining whether the parties have formed a contract through offer, acceptance and mutual assent to the contract terms, we rely on the objective standard of what the parties said and how they acted, not on their subjective state of mind. *Id.; Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 589 (Tex.App.-Austin 2007, pet. denied). Moreover, as with any other contract, "the parties' intent is governed by what they said, not by what they *intended* to say but did not." *Feiss v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) (emphasis in original).

Enercon's initial offer, the Agreement, expressly states WTH must accept by signing "duplicate *originals* of the Agreement*."* (Emphasis added). Thereafter, Enercon would accept by "dat[ing] and sign[ing] the duplicate originals of the agreement submitted and return one of the fully executed originals for [WTH] at [WTH's] address shown above." The Agreement then would "be binding upon all parties the date

---

[7]*See also Reuben Lowing v. Williams*, No. 07-03-0393-CV, 2005 Tex. App. LEXIS 62, at *5 (Tex.App.--Amarillo 2005, no pet.) (not designated for publication).

9

[Enercon] dates and signs the duplicate originals, which date shall be the 'execution date of Agreement.'"  As such, the Agreement would be the parties' "sole agreement," embodying "all representations or warranties made or implied except as specifically set forth [therein]."  Any changes to its terms were required to be "by written consent of all parties."

The unambiguous language of the Agreement, then, required that Enercon sign, date, and deliver a duplicate original to WTH *before* it became an enforceable contract binding on either party.  "If an instrument, even though signed, is delivered with the understanding that it is not to be binding as a contract until signed by another, the failure of the other person to sign the instrument destroys the very existence of the contract." *Baccus v. Plains Cotton Cooperative Association*, 515 S.W.2d 401, 402-03 (Tex.App.--Amarillo 1974, no writ) (citing *Thomason v. Berry*, 276 S.W. 185 (Tex. Comm'n App. 1925, judgmt. adopted)).[8]  Because Enercon failed to offer any evidence that it signed and delivered[9] the Agreement to WTH in the manner required, Enercon

---

[8]"Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (collected cases cited therein).  Parties may provide that the signature of each party is a prerequisite to a binding written contract; *In re Bunzl*, 155 S.W.3d 202, 209 (Tex.App.--El Paso 2004, no pet.) (citing Corbin on Contracts § 2.10 at 165 (Joseph M. Perillo rev. 1993), and, "[w]here parties to a written contract intend that it shall not be binding until it is signed by the parties, the signatures of both parties are required to give effect to the contract." *Birchminster Resources v. Corpus Christi Management Co.*, 517 S.W.2d 608, 611 (Tex.App.--Corpus Christi 1974, writ dism'd) (citing *Simmons & Simmons Constr. Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 418-19 (1955).

[9]Where there is no delivery of the contract, there is no mutual assent and, hence, no contract. *Baylor Univ.,* 221 S.W.3d at 635.  "If the reduction of the agreement to writing is thus made necessary, an assent to the writing as a sufficient one must also be manifested; this manifestation commonly consists of signing and delivery." *Simmons*, 286 S.W.2d at 418.  *See Baccus*, 515 S.W.2d at 402.  "An acceptance which resides solely within the exclusive knowledge of the acceptor without being communicated to the offeror is ordinarily no binding acceptance." *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex.App.--Houston [14th Dist.] 2005, no pet.).  *See Tex. Association of Counties County Government*

failed in its initial burden of proving the parties mutually assented to the Agreement or the forum-selection clause contained therein.

Furthermore, although WTH signed the Agreement, Desai did so only after altering its terms. *See* Paragraph 16 of the Agreement ("Affiliate shall sign duplicate *originals of the Agreement*"). As such, Enercon also failed to offer any evidence WTH ever accepted Enercon's original offer--the Agreement.[10]

Enercon asserts that WTH's orders for goods and services constituted acceptance of the *original* Agreement. However, while the invoices, themselves, could be evidence of individual contracts in their own right; *see A.F. Knight v. Virginia Mirror Co.*, 463 S.W.2d 428, 429 (Tex. 1971); *F.H. Berry v. Pierce Petroleum Corp.,* 120 Tex. 452, 39 S.W.2d 824, 825-26 (1931), they may not act as a substitute for acceptance under the Agreement because the subject matter of the Agreement does not permit acceptance by any other means including performance. Neither was there any evidence of any change to the method of acceptance by "written consent of all

---

*Risk Management Pool v. Matagorda County*, 52 S.W.3d 128, 132 (Tex. 2000); *Peden Industries v. Dahlstrom Corp.*, 520 S.W.2d 876, 877 (Tex.App.--Beaumont 1975, no writ).

[10]"It is an established rule of contracts that when a specific mode of acceptance is given within an offer, the offeree must convey his acceptance in the precise mode expressed within the offer in order to create a binding agreement." *Abraham Investment Company v. Payne Ranch, Inc.,* 968 S.W.2d 518, 525 (Tex.App.--Amarillo 1998, pet. denied). *See Advantage Physical Therapy, Inc.,v. Cruse,* 165 S.W.3d 21, 25 (Tex.App.--Houston [14th Dist.] 2005, no pet.); *Morrow v. De Vitt*, 160 S.W.2d 977, 983 (Tex.Civ.App.--Amarillo 1942, writ ref'd w.o.m.). "The acceptance must be identical with the offer; otherwise there is no binding contract;" *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex.App.--Amarillo 2008, pet. denied); *Gilbert d/b/a Consulting Economists v. Pettiette*, 838 S.W.2d 890, 893 (Tex.App.--Houston [1st Dist.] 1992, no writ), and "any attempt to change an offer operates as a rejection and counteroffer." *Komet v. Graves,* 40 S.W.3d 596, 601 (Tex.App.--San Antonio 2001, no pet.); *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex.App.--San Antonio 2000, pet. denied). *See United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968) ("It is well settled that an acceptance must not change or qualify the terms of the offer. If it does, the offer is rejected.")

11

parties."[11]  To the contrary, in his letter to WTH, Enercon's attorney relies on the terms of the *original* Agreement offered to WTH while describing Desai's handwritten terms as "unauthorized alterations."

While Enercon correctly points out that "it is not necessary in order to constitute a 'contract in writing' that the agreement be signed by both parties; one may sign and the other may accept by his acts, conduct or acquiescence in the terms of the agreement"; *see Pierce v. Pickett*, 432 S.W.2d 586, 589 (Tex.Civ.App.--Amarillo 1968, no writ), this rule does not apply here where "at least one of the parties has sufficiently expressed his intention not to be bound without [a signature]," and "the parties have made [signatures] necessary at the time they express their assent and as a condition modifying that assent."  *Simmons*, 286 S.W.2d at 418 (quoting Corbin on Contracts, Vol. 1, §§ 31 and 32, pp. 85 and 92).  Here, in the absence of the written consent of the parties to a different mode of acceptance, Enercon and WTH were expressly required to sign and deliver the Agreement to each other *before* there was an enforceable contract.  *Id.* at 418-19.[12]  *See Birchminster*, 517 S.W.2d at 612.

WTH's response to Enercon's motion to dismiss and arguments made by WTH's counsel at the hearing belie Enercon's assertion that WTH waived its argument on

---

[11]Neither can the e-mails between Desai and Rodriquez constitute any acceptance even if they could be interpreted as Enercon suggests which is doubtful.  Further, the Agreement expressly provided that it contained "all oral written agreements, representations and arrangements between the parties hereto."

[12]Neither *Bocchi Americas Associates, Inc. v. Commerce Fresh Marketing Inc.,* 515 F.3d 383 (5th Cir. 2008) nor *McCarty v. C.H. Langdeau*, 337 S.W.2d 407 (Tex.App.--Austin 1960, writ ref'd n.r.e.), are of any avail to Enercon.  Neither court was required to determine whether acceptance occurred in conformity with an express contractual provision requiring the parties' signatures before the contract was enforceable.  *See* 515 F.3d at 391-92; 337 S.W.2d at 412.

appeal that Enercon's signatures were required before the Agreement would be enforceable. This issue was argued in WTH's pleadings and at the hearing.[13] The trial court's order stated that it considered the evidence, pleadings and argument of counsel. As a result, we conclude the issue was not waived. *See* Tex. R. App. P. 33.1(a). *See also Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex.App.--Austin 1995, no writ) (issue whether statutory notice was defective not waived where counsel argued notice was invalid and copy of notice was attached to pleading); *FDIC v. Attayi,* 745 S.W.2d 939, 942 (Tex.App.--Houston [1st Dist.] 1988, no writ) (issue whether guarantee agreement specifically provided for renewal not waived where counsel argued debt in issue had been renewed and copy of guaranty attached to pleading).[14] Likewise, here, WTH argued the issue and incorporated an attached copy of the Agreement into its response.

---

[13]In WTH's response to Enercon's motion to dismiss, WTH asserted "[Enercon] never signed the [agreement] and never assented to the terms of the [agreement] either verbally or by course of conduct. . . . Plaintiff and Defendant have never entered into a written contract." WTH also incorporated by reference into their response Desai's affidavit and the Agreement including paragraph "16. ACCEPTANCE OF CONTRACT AND EXECUTION DATE" as well as WTH's internal e-mails wherein the only method of acceptance discussed was by signature and execution of the Agreement by both parties. At the hearing, WTH's counsel asserted "[t]here is no contract . . . no meeting of the minds. . . . He never signed it; the guy never signed it. . . . If there is no contract, then the Forum Selection Clause is poof."

[14]Neither does *Century 21 Real Estate Corp. v. Hometown Real Estate Co.,* 890 S.W.2d 118, 124 (Tex.App.--Texarkana 1994, writ denied) nor *Wohlfahrt v. Holloway,* 172 S.W.3d 630, 640 (Tex.App.--Houston [14th Dist.] 2005, no pet.), *cert. denied,* 549 U.S. 1052, 127 S.Ct. 666, 166 L.Ed.2d 514 (2006) require a different result as Enercon suggests. In *Century 21,* the appellate court refused to allow International to assert on appeal that Hometown was a "consumer" under the DTPA when, before the trial court, International had asserted only that *International* was a seller of goods and services to Hometown. In *Wolhlfahrt*, the appellate court refused to permit *Wohlfahrt* to assert on appeal the court was bound to set post-judgment rates under a statutory provision *different* than that argued before the trial court. 172 S.W.2d at 639-40.

13

Because Enercon failed in its initial burden of establishing that the parties mutually assented to the Agreement or its forum-selection clause, WTH's sole issue is sustained.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Patrick A. Pirtle
Justice