**PHOENIX NETWORK TECHNOL-OGIES (EUROPE) LIMITED, Appellant,**

v.

**NEON SYSTEMS, INC. and Computer Associates International, Inc., Appellees.**

No. 01–04–00039–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 2005.

Blake L. Beckham, Stewart Hyer Thomas, and Pascual Covarrubias Meyer, Beckham & Thomas, L.L.P., Dallas, for Appellant.

Robert F. Henderson, Jackson Walker L.L.P, Dallas, Charles Larry Carbo III, Jackson Walker, L.L.P, Jennifer Horan Greer, Samuel William Cruse, Gibbs & Bruns, L.L.P, Houston, for Appellees.

Panel consists of Justices TAFT, ALCALA, and HIGLEY.

## OPINION

TIM TAFT, Justice.

Appellant, Phoenix Network Technologies (Europe) Limited ("Phoenix"), appeals from a judgment dismissing without prejudice its claims against Neon Systems, Inc. ("Neon") and Computer Associates International, Inc. ("CAI") (together, "appellees") based on a contractual forum-selection clause designating the United Kingdom ("U.K.") as the venue for suit. We determine whether (1) the forum-selection clause is valid and enforceable and (2) Neon, a non-signatory to the agreement, may nonetheless enforce the agreement's forum-selection clause. We affirm.

### Background

Phoenix was an English company headquartered in the U.K. In 1996, CAI's predecessor, Phoenix Network Technologies, Inc., and Phoenix's predecessor, Diplomat Systems Limited, entered into an agreement ("the Distribution Agreement"). Under the Distribution Agreement, CAI's predecessor (Phoenix Network Technologies, Inc.) granted to Phoenix's predecessor (Diplomat Systems Limited) the "non-exclusive right to license, sub-license, market, distribute and support" CAI's predecessor's product, "Diplomat" software, within a territory including mainly European countries. In 1997, Sterling Software, Inc. ("Sterling") purchased Phoenix Network Technologies, Inc.'s assets, including the Distribution Agreement. In 2000, Neon contracted with Sterling to acquire certain rights to the Diplomat software. Sterling at some point merged with CAI.

In January 2003, Phoenix sued Neon and CAI in Fort Bend County, Texas. Phoenix alleged that Neon's rights to the Diplomat software were subject to Phoenix's rights under the Distribution Agreement and that Neon had failed to recognize Phoenix's superior rights. Accordingly, Phoenix sued Neon for tortious interference with the Distribution Agreement and with Phoenix's prospective business relations and for unfair competition. Although Phoenix also sued CAI for tortious interference with Phoenix's prospective business relations, Phoenix described its claim against CAI to the trial court as one for breach of the Distribution Agreement,[1] and CAI ap-

---

1. Phoenix's description of its claim as one for breach of contract was supported by the allegation's substance: "For its part, [CAI] tortiously interfered with Phoenix's prospective business relations by wrongfully and unlawfully refusing to abide by its Distribution Agreement with Phoenix. [CAI] was aware of Phoenix's potential contracts. Due to [CAI's]

pears to have interpreted Phoenix's claim as including a claim for breach of contract.

Appellees moved to dismiss Phoenix's claims under the Distribution Agreement's forum-selection clause. After two hearings, the trial court granted both appellees' motions and dismissed all claims without prejudice. The trial court did not specify in the dismissal orders the basis for its ruling, and it did not enter fact findings and legal conclusions.

### Standard of Review

■■■ A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit. *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex.App.-Dallas 1996, no writ). As with our review of rulings on motions to dismiss generally, we review for abuse of discretion. *See, e.g., My Café–CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 864 (Tex.App.-Dallas 2003, no pet.). However, to the extent that our review involves contractual interpretation of a forum-selection clause—a legal matter—the standard of review is *de novo. See Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.-Austin 1999, pet. denied).

### Waived Challenge

■■ In point of error five, Phoenix asserts that the trial court erred in dismissing its claims without including a "return jurisdiction clause" in the dismissal orders, meaning that the trial court did not "take[ ] steps" in its dismissal order "to ensure that [appellees] would not be al-

lowed to use a forum selection clause as a shield to litigation in one forum, and then be allowed to assert it as a jurisdictional defense in the United Kingdom." Phoenix waived this challenge by not asserting it below. *See* Tex.R.App. P. 33.1(a). Furthermore, we note that both appellees stipulated below that they would not contest jurisdiction if suit were brought in the U.K.

We overrule point of error five.

### The Validity of the Forum– Selection Clause[2]

In point of error one, Phoenix argues that the trial court erred in "misapplying Texas law by granting [appellees'] motions to dismiss based on a forum selection clause." In point of error four, Phoenix argues that the trial court erred in dismissing its claims because "the public policy rationale behind the enforcement of forum selection clauses is not met in this case."

### A. The Forum–Selection Clause and Other Pertinent Contractual Provisions

The Distribution Agreement provided as follows:

> 30.1 The parties hereby agree that this Agreement and the provisions hereof shall be construed in accordance with English law and the venue for resolution of any disputes arising out of this Agreement shall be the United Kingdom.

This provision contained both a choice-of-law provision and a forum-selection clause. "This Agreement" referred to the

---

wrongful and unlawful acts, Phoenix lost substantial contracts....."

**2.** For purposes of this section, we assume that Neon, although it did not sign the Distribution Agreement, could nonetheless enforce the

agreement's forum-selection clause against Phoenix. We consider Neon's ability to enforce the clause in a later section of this opinion.

Distribution Agreement between Phoenix's and CAI's predecessors. The Distribution Agreement also attached a schedule entitled "Schedule D—License Agreement," which was a form contract that CAI's predecessor (and thus CAI) was to use in contracting with its customers. That Schedule D contained a choice-of-law provision providing that Arizona law would apply. The Distribution Agreement also contained a merger clause.

## B. The Law Relating to Forum–Selection Clauses

■ A forum-selection clause is a creature of contract. *See Southwest Intelecom, Inc.*, 997 S.W.2d at 324–25 (applying contract-construction principles to interpret forum-selection clause). "A forum selection clause can be a valuable tool because it allows parties to select, up front, a specific jurisdiction for resolving future disputes, which can reduce litigation risks and costs." James T. Britton Jr., *A Practitioner's Guide to Forum Selection Clauses in Texas*, 1 Hou. Bus. & Tax L.J. 79, 80 (2001) [hereinafter "Britton"].

### 1. The Two Tests for Determining Forum–Selection Clauses' Enforceability

Texas courts, like others across the country, had historically invalidated forum-selection clauses for violating public policy. *In re AIU Ins. Co.*, 148 S.W.3d 109, 111 (Tex.2004); *see also M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); Britton at 81, 83–84. However, since the United States Supreme Court's landmark decision in *M/S Bremen*, and its later refining pronouncements in *Carnival Cruise Lines, Inc. v. Shute*,[3] Texas courts have begun enforcing forum-selection clauses. *In re*

*AIU Ins. Co.*, 148 S.W.3d at 111–12; Britton at 81, 89–98.

■ Until recently, the standards adopted by the United States Supreme Court and by most Texas courts of appeals for determining the enforceability of forum-selection clauses differed in important respects, however. *See* Britton at 98–103. Under the test of *M/S Bremen* and *Shute*, forum-selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10, 92 S.Ct. at 1913; *see Shute*, 499 U.S. at 588, 111 S.Ct. at 1525 (citing *M/S Bremen*). The clause's opponent has a "heavy burden" to make a "strong showing" that the forum-selection clause should be set aside. *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916; *see Shute*, 499 U.S. at 592, 111 S.Ct. at 1526 (citing *M/S Bremen*). This burden includes "clearly" to show that enforcement would be "unreasonable and unjust"; that the clause was "invalid for such reasons as fraud or overreaching"; that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision"; or that "the contractual forum will be so gravely difficult and inconvenient" that the opponent "will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 15, 18, 92 S.Ct. at 1916, 1917.

■ In contrast, most Texas courts of appeals, including our own, had recognized a two-part test to determine whether a forum-selection clause was valid and enforceable: the clause was enforceable if (1) the parties contractually consented to submit to the exclusive jurisdiction of another jurisdiction and (2) the other jurisdiction generally recognized the validity of such

---

**3.** *Id.*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

provisions.[4] These two aspects had been described as threshold criteria. *Southwest Intelecom, Inc.*, 997 S.W.2d at 324. Even if these two threshold criteria were met, however, a forum-selection clause would not bind a Texas court if the interests of witnesses and public policy strongly favored that the suit be maintained in a forum other than the one to which the parties had agreed.[5]

The principal differences between the *M/S Bremen* and *Shute* test and the Texas courts-of-appeals test are: (1) the *M/S Bremen* and *Shute* test views the forum-selection clause as *prima facie* valid and enforceable, while the Texas test requires the clause's proponent to establish, as a threshold matter, that the forum that the parties selected recognizes the validity of the general type of forum-selection clause [6] and (2) the *M/S Bremen* and *Shute* test allows the opponent to defeat the forum-selection clause if, among other things, its

enforcement would be unreasonable or unjust, while the Texas test does not expressly recognize this enforcement exception. *See* BRITTON at 101–03; *see also Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 97–98 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (noting differences in two tests without determining which applied).

### 2. The Current State of the Law in Texas

The question remained, however, as to whether and to what extent Texas courts would apply the *M/S Bremen* and *Shute* test. *See* BRITTON at 100–01; *see also Holeman*, 94 S.W.3d at 97–98. This question arose because (1) at least three courts of appeals (including our own) continued applying the Texas test after *M/S Bremen*, but before *Shute*;[7] (2) at least one Texas court of appeals continued to apply the Texas test after *Shute*;[8] and (3) three Texas courts of appeals (including our own),

---

**4.** *See My Café–CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 864–65 (Tex.App.-Dallas 2003, no pet.); *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 97 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203 (Tex.App.-Eastland 2001, pet. denied); *Mabon Ltd. v. Afri–Carib Enters., Inc.*, 29 S.W.3d 291, 296–97 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex.App.-Austin 1999, pet. denied); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex.App.-Dallas 1996, no writ); *Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654, 656 (Tex.App.-Houston [1st Dist.] 1993, no writ). Phoenix asserts on appeal, as it did below, that this Texas test required the proponent to show that the chosen forum would enforce *the particular forum-selection clause at issue in each case*, rather than simply showing that the forum generally recognized such clauses' validity. However, no case on which Phoenix relies so held. Additionally, all authority that we have found setting out this aspect of the Texas test indicates that the chosen forum need recognize only the validity of such claus-

es or types of clauses generally, rather than that it find the particular clause to be enforceable. *See id.*

**5.** *See My Café–CCC, Ltd.*, 107 S.W.3d at 865; *Holeman*, 94 S.W.3d at 97; *Southwest Intelecom, Inc.*, 997 S.W.2d at 324; *Accelerated Christian Educ., Inc.*, 925 S.W.2d at 71; *Greenwood*, 857 S.W.2d at 656.

**6.** The other threshold matter required by the Texas courts-of-appeals test—that the proponent show that the parties contractually agreed on an exclusive forum—adds nothing to the *M/S Bremen* and *Shute* test and is consistent with it. If the parties have not agreed to an *exclusive* forum, then the clause to which they agreed is not a forum-selection clause in the first place.

**7.** *See Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex.App.-Austin 1999, pet. denied); *Accelerated Christian Educ., Inc.*, 925 S.W.2d at 70–71; *Greenwood*, 857 S.W.2d at 656.

**8.** *See My Café–CCC, Ltd.*, 107 S.W.3d at 864–65.

mainly in situations in which federal law was either implicated or required, either adopted the *M/S Bremen* and *Shute* test in its entirety, without discussion of the Texas test, or combined the two tests.[9]

In 2004, however, the Texas Supreme Court appears to have answered this question. The court cited with approval the *M/S Bremen* and *Shute* test and applied many of the test's factors, rather than relying on the test applied by the majority of Texas courts of appeals through that time. *See In re AIU Ins. Co.*, 148 S.W.3d at 113–14. *In re AIU Insurance* was not a maritime case. In *In re AIU Insurance*, AIU, a New York corporation, provided pollution-liability coverage for, among other entities, a Delaware corporation ("Dreyfus") with its principal place of business in Texas. *Id.* at 110–11. Dreyfus sued AIU in Texas for breach of contract, Insurance Code violations, fraudulent inducement, and negligent misrepresentation and for a declaratory judgment that certain environmental claims against it were covered by the policy. *Id.* at 111. AIU moved to dismiss the suit because the policy contained a forum-selection clause providing for suit in New York. *Id.* The trial court denied AIU's dismissal motion, the court of appeals denied writ of mandamus, and the Texas Supreme Court granted writ. *Id.* at 110–11. In holding that the forum-selection clause was enforceable, the supreme court rejected Dreyfus's arguments that certain of the factors established in *M/S Bremen* and *Shute* made the clause unenforceable. *Id.* at 111–16. The supreme court did not discuss the Texas test

employed by most courts of appeals up until that time, but neither did it expressly state that forum-selection clauses were *prima facie* valid, as provided under the *M/S Bremen* and *Shute* test. *See id., passim.* The supreme court did, however, squarely place the burden on Dreyfus, the party opposing enforcement of the forum-selection clause, to carry its "heavy burden" of showing that the forum-selection clause should not be enforced under the *M/S Bremen* and *Shute* test. *Id.* at 113–14.

Later the same year, the Texas Supreme Court issued a per curiam opinion applying the *In re AIU Insurance Co.* holding. *See In re Automated Collection Techs., Inc.*, 156 S.W.3d 557 (Tex.2004). *In re Automated Collection Technologies* did not involve maritime law; rather, it involved a suit between a Texas corporate plaintiff and a Pennsylvania corporate defendant for failure to pay for services rendered pursuant to a written contract. *Id.* at 558. In explaining its earlier holding, the *In re Automated Collection Technologies* court stated, "In *In re AIU Ins. Co.*, we held that enforcement of forum-selection clauses is mandatory unless the party opposing enforcement 'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 559 (quoting *In re AIU Ins. Co.*, 148 S.W.3d at 112). The *In re Automated Collection Technologies* court then noted that the party opposing the clause's enforcement had not sustained "its burden"

---

9. *See Abacan Tech. Servs. Ltd. v. Global Marine Intern. Services Corp.*, 994 S.W.2d 839, 843–45 (applying *M/S Bremen* and *Shute* test to analyze forum-selection clause in admiralty contract for international transaction, without mentioning Texas test); *Stobaugh v. Norwegian Cruise Line, Ltd.*, 5 S.W.3d 232, 234–36 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (applying maritime law to suit involving

forum-selection clause in cruise-line passenger ticket); *Barnett*, 38 S.W.3d at 203 (discussing both Texas test and *M/S Bremen* and *Shute* test in analyzing enforceability of forum-selection clause, though situation did not involve federal subject matter); *see also Holeman*, 94 S.W.3d at 97–98 (noting that certain Texas courts of appeals had applied *M/S Bremen* and *Shute* test in varying contexts).

because it had "submitted no evidence" showing that enforcement would be "unreasonable or unjust" and had not asserted that the clause was invalid. *Id.* And in 2005, the Texas Supreme Court summarily reaffirmed, in a case concerning a ruling on a special appearance, that "enforcement of a forum-selection clause is mandatory absent a showing that 'enforcement would be unreasonable and unjust, or that the clause was invalid due to fraud or over-reaching.'" *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 793 (Tex.2005) (quoting *In re Automated Techs., Inc.,* 156 S.W.3d at 559).

We draw two conclusions from *In re AIU Insurance Co., In re Automated Collection Technologies,* and *Michiana Easy Livin' Country, Inc.* First, the Texas Supreme Court has expressly adopted the *M/S Bremen* and *Shute* test, including who has the burden to show that the forum-selection clause should not be enforced and of what that burden consists. Second, the Texas Supreme Court has implicitly adopted the presumption from *M/S Bremen* and *Shute* that forum-selection clauses are *prima facie* valid. The implicit adoption of this presumption appears, as a matter of pure logic, to supplant the threshold requirement, previously recognized by most Texas courts of appeals, that the clause's proponent establish that the forum that the parties selected recognizes the validity of forum-selection provisions.

The parties litigated the forum-selection-clause issue below, and briefed it on appeal, before the *In re AIU Insurance Co., In re Automated Collection Technologies,* and *Michiana Easy Livin' Country, Inc.* opinions issued. Nonetheless, the correct law is that expressed in *In re AIU Insurance Co., In re Automated Collection Technologies, Michiana Easy Livin' Country, Inc., M/S Bremen,* and *Shute.*

We will thus analyze the issues under the *M/S Bremen* and *Shute* test, as the Texas Supreme Court has instructed since the parties briefed the issues. We note, however, that our disposition would be the same under either test discussed above, and some of our discussion explains why this is so.

## C. The Enforceability of the Distribution Agreement's Forum–Selection Clause

Under points of error one and four, Phoenix asserts six arguments in support of its contention that the forum-selection clause was either invalid or unenforceable. First, Phoenix argues that appellees did not carry their threshold burden of showing that Phoenix and CAI agreed that the U.K. would be the exclusive jurisdiction for suit. Second, and subsumed within the first argument, is Phoenix's assertion that parol evidence, as well as evidence concerning post-contract actions by CAI's predecessor, Sterling, indicated that the forum-selection clause did not show the parties' intent to litigate exclusively in the U.K. Third, and alternatively to its first two arguments, Phoenix argues that, if the forum-selection clause provided for exclusive jurisdiction in the U.K., the clause was nonetheless invalid for having been the result of mutual mistake. Fourth, Phoenix asserts that appellees did not carry their alleged threshold burden of showing that the U.K.'s various jurisdictions would enforce forum-selection clauses. Fifth, Phoenix argues that the forum-selection clause was unenforceable for being vague. Sixth, Phoenix argues that the forum-selection clause was unenforceable for violating Texas public policy. We address Phoenix's first two arguments together and the remainder separately.

### 1. Whether the Parties Chose the U.K. as the Exclusive Forum

In construing a forum-selection clause, "our primary goal is to give effect to the written expression of the parties' agreement." *See Southwest Intelecom,* 997 S.W.2d at 324. "We must read the provision in its entirety, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Id.* at 324–25. "Parol evidence of the parties' intentions is not admissible to aid our interpretation, but we must read the jurisdiction clause in light of relevant surrounding circumstances." *Id.* at 325. If, after the application of contract-construction rules, a contract such as a forum-selection agreement is susceptible of only one reasonable meaning, the contract is unambiguous. *See Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). When a contract is unambiguous, parol evidence cannot be considered to create an ambiguity or to give the contract a meaning different from that of its plain language. *Id.* In contrast, if, after the application of contract-construction rules, a contract remains susceptible to more than one reasonable interpretation, it is ambiguous. *Id.; see Southwest Intelecom,* 997 S.W.2d at 325 (applying same rule to forum-selection clause). Only if a contractual provision is ambiguous may parol evidence be considered to determine which meaning is proper. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980). The purpose of a merger clause, like that to which the parties here agreed, is to invoke the parol evidence rule when appropriate. *Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 615 (Tex.App.-Waco 2000, pet. denied).

Here, the forum-selection clause could not more plainly require that any disputes arising out of[10] the Distribution Agreement be litigated in the U.K. The use of "shall" generally indicates a mandatory requirement. *See, e.g., Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 961 (Tex. 1999); *Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342, 1346 (10th Cir.1992) (applying same rule of construction to forum-selection clause). Additionally, the forum-selection clause provides that "*the* venue" for suit will be in the U.K., not "*a* " venue for suit. Use of the definite article indicates that the parties intended for the U.K. to be the exclusive venue.

This is not a clause like those considered in *Mabon Ltd. v. Afri–Carib Enterprises, Inc.* or *Southwest Intelecom, Inc.,* on which Phoenix relies. *See Mabon Ltd.,* 29 S.W.3d 291 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Southwest Intelecom, Inc.,* 997 S.W.2d at 323, 325–26. In *Southwest Intelecom, Inc.,* the contract provided only that "[t]he parties stipulate to jurisdiction and venue in Ramsey County, Minnesota, as if this Agreement were executed in Minnesota." *Id.,* 997 S.W.2d at 323, 325–26. Because that language "neither prohibit[ed] litigation in jurisdictions other than" the stated county "nor provide[d] that Minnesota courts ha[d] exclusive jurisdiction over all claims arising out of the contract," Ramsey County was not the exclusive venue for suit. *Id.* at 325. In *Mabon,* the forum-selection clause provided that "the Federal District of Nigeria shall have venue." *Id.,* 29 S.W.3d at 297. The *Mabon* court correctly concluded that that language provided only that Nigeria would be a suitable venue if the parties chose to litigate there, not that the parties had to bring suit there. *Id.* In contrast, courts have had little trouble interpreting provisions like the one here—which provide that *disputes be litigated* in a particular place, rather than

---

10. Phoenix does not argue that its claims fall outside the scope of the forum-selection clause's phrase "any disputes arising out of" the Distribution Agreement.

that a particular place *be the proper venue*—to designate an exclusive, and thus valid, forum.[11] In short, the forum-selection clause here unambiguously meant what it said: the parties had to bring suit concerning any dispute arising out of the Distribution Agreement in the U.K. Nothing within the clause itself made the clause ambiguous.

Phoenix argues that two matters outside the forum-selection clause's plain language render the clause ambiguous, thus allowing for consideration of Phoenix's parol evidence of the contracting parties' intent.[12] That parol evidence consisted of the affidavits of Trevor Smyth and Samuel Coffee, who signed the Distribution Agreement on behalf of Phoenix's and CAI's predecessors. Coffee averred that

> Phoenix USA and Phoenix knew prior to executing the Distribution Agreement that Phoenix would be procuring U.K. and European-based subdistributors of the product. Therefore, Phoenix USA and Phoenix drafted the Forum Selection Clause to account for the possibility of litigation between Phoenix and the U.K. and European-based product sub-distributors and resellers. Accordingly, the Forum Selection Clause sets out Phoenix USA and Phoenix's intention that future disputes between Phoenix and the imminent U.K. and European-based product subdistributors and re-sellers would have the [U.K.] as a forum for those potential disputes with Phoe-

nix.... The Forum Selection Clause was not negotiated or drafted to express Phoenix USA's intention to have disputes heard by the Courts of the [U.K.]. Phoenix USA expected that disputes between Phoenix USA and Phoenix would be resolved by the Courts of Arizona.

Smyth averred that

> The Distribution Agreement's clause 30.1 was not negotiated or drafted to express [either party's] intent to have disputes heard by the Courts of the United Kingdom. [Each party] expected that disputes between [CAI's predecessor] and Phoenix would be resolved by the courts of Arizona. [The parties] drafted and negotiated the clause 30.1 to set out [their] intention that potential future disputes between Phoenix and future U.K. and Europe-based product sub-distributors and resellers under the Distribution Agreement would have the United Kingdom as a forum for those potential disputes. In other words, Phoenix's disputes with its European-bases [sic] sub-distributors would be in the United Kingdom.

Of course, the text quoted from these affidavits contradicted the forum-selection clause's plain language, which provided that "the venue for resolution of *any disputes arising out of this Agreement*" (as opposed to only some disputes between certain entities arising out of the agreement) "shall be the United Kingdom." (Emphasis added.) Accordingly, we may

---

**11.** *See Accelerated Christian Educ., Inc.*, 925 S.W.2d at 69, 70–71 (considering following forum-selection clause: "[I]f [plaintiff] brings the action, it shall be instituted in one of the courts specified in subparagraph (a) above"); *Greenwood*, 857 S.W.2d at 655, 656–57 (considering following forum-selection clause: "[A]ny legal action concerning this Agreement shall be brought in a court of competent jurisdiction in the State of Oregon."); *Sterling Forest Assocs., Ltd. v. Barnett–Range Corp.*, 840 F.2d 249, 251–52 (4th Cir.1988) (consid-

ering following forum-selection clause: "[T]he parties agree that in any dispute jurisdiction and venue shall be in California."), *abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

**12.** Appellees claim that Phoenix waived its challenge based on ambiguity, but Phoenix did not.

consider the affidavits only if the forum-selection clause was rendered ambiguous by one of the two external matters on which Phoenix relies.

The first external matter on which Phoenix relies is the Distribution Agreement's Schedule D, which contained a choice-of-law provision requiring the application of Arizona law to CAI's contracts with its customers. Phoenix argues that Schedule D's choice of Arizona law rendered the forum-selection clause's designation of the U.K. ambiguous, so that Smyth's and Coffee's affidavits could be considered. We disagree. Schedule D's cited language is a *choice-of-law* provision, not a *choice-of-forum* provision. Additionally, the fact that CAI's licensing contracts with *its* customers required the application of Arizona law had no effect on the choice of law or forum to which *CAI and Phoenix* had agreed to be bound for "any disputes arising out of [their Distribution] Agreement." The two types of agreements' being independent covenants, their choice-of-law and choice-of-forum provisions had no effect on one another.[13]

The second external matter on which Phoenix relies is the fact that CAI's immediate predecessor, Sterling, negotiated to replace the Distribution Agreement with one that contained a Texas choice-of-law provision. However, this circumstance did not render the forum-selection clause ambiguous because (1) Sterling and Phoenix never consummated that agreement; (2) the proposed amendment concerned only a change in the choice of law, not in the

choice of forum; and (3) if anything, Sterling's attempt to change the agreement to apply Texas law implicitly recognized that Texas law (and, under Phoenix's logic, a Texas forum) did *not* apply under the Distribution Agreement's current terms.

Because the forum-selection clause was not ambiguous for the reasons that Phoenix urges, we hold that Phoenix's parol-evidence affidavits could not be considered to render the clause ambiguous or to vary its plain terms—which we have already held unambiguously required that disputes arising out of the Distribution Agreement be litigated in the U.K. *See Daniel,* 243 S.W.2d at 157.

## 2. Whether the Forum–Selection Clause Was the Result of Mutual Mistake

Alternatively, Phoenix argues that the forum-selection clause was invalid for having been the result of the contracting parties' mutual mistake.

"Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990). "The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, ... but rather solely by objective circumstances surrounding execution" of the contract. *Id.* "The parol evidence rule does not bar extrinsic proof of mutual mistake." *Id.* The

---

13. Phoenix presented the affidavit of its English-law expert, Bitu Bhalla, in which he opined that Schedule D's choice of Arizona law for licensing contracts between CAI and its customers made the separate Distribution Agreement's choice of forum ambiguous. However, determining whether the parties agreed to an exclusive forum is a question of law that the trial court could have resolved on

its own, if it found (as do we) that Bhalla's legal conclusion about the effect of Schedule D was incorrect. Alternatively, appellees presented an affidavit from their own English law expert, who opined that Schedule D did not have the effect that Bhalla claimed and whom the trial court could have considered persuasive.

burden was on Phoenix to prove mutual mistake. *See id.*

Phoenix again relies on the above-quoted portions of the affidavits of Coffee and Smyth, arguing that, "no matter what the [forum-selection clause] states, its poor drafting was the result of mutual mistake because no one intended for disputes between Phoenix and [CAI] to be resolved in the [U.K.]." However, their affidavits made merely "self-serving subjective statements of the parties' intent," rather than providing the "objective circumstances surrounding execution" of the Distribution Agreement that would be a proper basis for mutual mistake. *See id.* We hold that the trial court did not err in implicitly rejecting mutual mistake as a basis for the forum-selection clause's invalidity.

### 3. Whether the Selected Forum Recognized the Validity of Forum–Selection Clauses Generally

■ Phoenix further asserts that the trial court erred in dismissing its claims because appellees did not demonstrate that the three legal systems comprising the U.K. would enforce forum-selection clauses.[14]

■ Phoenix's arguments assume that, as a threshold matter, appellees had to show that the U.K. would recognize the validity of forum-selection clauses. *See, e.g., My Café–CCC, Ltd.,* 107 S.W.3d at 864. The *M/S Bremen* and *Shute* test that our state supreme court currently employs does not have this threshold requirement, instead providing that forum-selection clauses are *prima facie* valid and will be enforced unless the opponent makes a strong showing that the forum-selection clause should be set aside. *See In re AIU Ins. Co.,* 148 S.W.3d at 113–14 (citing *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916); *In re Automated Collection Techs., Inc.,* 156 S.W.3d at 559. Therefore, under current Texas Supreme Court precedent, appellees did not need to establish that any jurisdiction within the U.K. recognized the validity of forum-selection clauses generally.[15]

**14.** In footnote four, above, we have already rejected Phoenix's actual argument: that the proponent must show that the chosen forum would enforce *the particular forum-selection clause at issue in each case,* rather than simply showing that the forum generally recognizes such clauses' validity. Liberally construing its briefing, however, we construe Phoenix also to argue that the chosen forum did not enforce forum-selection clauses in general.

**15.** Nonetheless, we conclude that, even if appellees had this threshold burden, they carried it. The Distribution Agreement provided for the application of English law. Appellees submitted the affidavits of Laurence Anton Rabinowitz, a barrister practicing in the English bar, who opined that English law recognized the validity of forum-selection clauses generally, subject to certain exceptions; that English law would recognize *this particular* forum-selection clause as valid and enforceable; and that English courts would interpret the combination of the English choice-of-law clause and the U.K. choice-of-forum clause as indicating the parties' intent to make England, rather than Scotland or Northern Ireland, their chosen forum. Appellees also presented the trial court with excerpts from an English treatise that Rabinowitz opined was the "leading work on the subject," indicating that, "[a]s a general rule, but subject to important exceptions, English courts (in common with the courts of other countries) will give effect to a choice of jurisdiction." *See Dicey & Morris,* 1 THE CONFLICT OF LAWS § 12–081, at 428 (13th ed.2000); *see also M/S Bremen,* 407 U.S. at 4, 92 S.Ct. at 1910 (noting that English courts in that case had *ultimately* upheld parties' choice-of-forum clause). Although Phoenix presented expert testimony by its English barrister, Bitu Bhalla, that contradicted some of the opinions that Rabinowitz offered, the trial court was free to be advised on English law by the opinion of appellees' expert, rather than by that of Phoenix's expert. Finally, we note that both experts agreed that English law generally enforced forum-selection clauses.

### 4. Whether the Forum–Selection Clause Was Unenforceable for Being Vague

■ Phoenix also argues that the forum-selection clause was unenforceable because it was "vague" in two respects: the clause (1) was too narrow in scope and (2) allowed for suit in the U.K., which is composed of four principal jurisdictions and which employs three legal systems.

■ Phoenix first argues that the forum-selection clause was vague because the parties allegedly made only limited disputes subject to the clause, while the law allegedly requires that the parties agree to submit all disputes in the chosen forum. Phoenix cites no authority requiring the breadth that it proposes, and we have found none. Just as parties may contract to send what disputes they wish to arbitration, so may parties contract for particular disputes to be resolved in a chosen forum. Moreover, we reject Phoenix's further assertion that the forum-selection clause here did not require that all disputes arising out of the Distribution Agreement be litigated in the U.K. simply because the clause used "any" instead of "all." *See Bd. of Adjustment v. C.C. Un-derwood,* 332 S.W.2d 583, 586 (Tex.Civ. App.-San Antonio 1960, writ ref'd n.r.e.) (noting that "any" means "all").

Second, Phoenix argues that the forum-selection clause was vague because (1) it provided for venue in "the United Kingdom," a nation consisting of Great Britain (which itself consists of England, Wales, and Scotland) and Northern Ireland and which employs three legal systems for civil disputes,[16] and (2) the clause did not specify a particular court or court system within one of these four principal jurisdictions within the U.K., given that "there are certainly courts within the U.K. that cannot properly exercise jurisdiction" over Phoenix's claims. Phoenix admits that "no Texas case specifically addresses this requirement," and we have found none expressly requiring that the parties limit their choice of forum to one political subdivision within a single larger political unit or that they specify a particular court within the selected jurisdiction. In fact, we have found opinions in which courts have, without discussing the issue that Phoenix raises, either enforced forum-selection clauses when a larger political unit (such as an entire country) was indicated [17] or when the parties did not specify a particular court or

---

16. *See* RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 2075–76 (2nd ed.); http://www.direct. gov.uk/Gtgl1/GuideTo Government/ About Britain/AboutBrit ainArticles/fs/en? CONTENT_ID= 10012517 & chk= loPvDs (last visited Aug. 19, 2005); http://www.direct. gov.uk/Gtgl1/Guide ToGovernment/Jud iciary/fs/en (last visited Aug. 19, 2005).

17. *See Bison Pulp & Paper Ltd. v. M/V Pergamos,* 1995 WL 880775, at *11, *14 (S.D.N.Y. 1995) (not designated for publication) (considering forum-selection clause that provided that "[a]ny dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business," which was Cyprus); *Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen,* 188 F.Supp.2d 454, 460–61 (D.N.J.2001) (concluding that forum-selec-

tion clause providing that "the court of jurisdiction ... is to be at the place where this insurance certificate is issued or at the head offices of the insurers" was exclusive for mandating that litigation occur in one of two jurisdictions, both of which were Austria), *aff'd,* No. 01–3322, 36 Fed.Appx. 491 (3rd Cir. June 11, 2002) (not designated for publication); *cf. Ace Ins. Co. v. Zurich Am. Ins. Co.,* 59 S.W.3d 424, 426, 429 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (holding that personal jurisdiction existed over non-resident defendant under service-of-suit clause in insurance policy; although it was not basis for this holding, noting that plaintiff agreed under clause to "submit to the jurisdiction of a Court of competent jurisdiction within the United States").

court system within a chosen forum.[18] Simply put, "exclusive" does not necessarily have to mean "single." [19]

### 5. Public Policy

■ Phoenix further contends that the trial court erred in enforcing the forum-selection clause because, under the facts of this case, "its enforcement frustrates the legal justification and rationale behind Texas's forum selection clause law." Phoenix makes three arguments in support.

First, Phoenix argues that neither Neon nor CAI "ever bargained for . . . [making] the U.K. the exclusive forum for any disputes with Phoenix." With respect to CAI, we have already rejected above the arguments that Phoenix makes in support. With respect to Neon, we discuss later in this opinion whether it may enforce the forum-selection clause, to which it was not a signatory, against Phoenix.

Second, Phoenix appears to argue that, because CAI was a "twice-removed assignee" of and did not itself enter into the Distribution Agreement, public policy supports not enforcing the Distribution Agreement's forum-selection clause. However, there was evidence that CAI was the successor to Phoenix Network Technologies, Inc. and that CAI had obtained Phoenix Network Technologies, Inc.'s rights and obligations under the Distribution Agreement. With certain exceptions that are inapplicable here, Texas law generally allows parties to assign their rights and duties under contracts. *See, e.g., Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (Tex. 1992). We decline to hold that Texas public policy prevents an assignee, to whom the rights and obligations of a contract containing a forum-selection clause have been assigned, from obtaining enforcement of the clause simply because it was not an original contracting party.

Third, Phoenix notes that, in most cases in which a court has enforced a forum-selection clause, the party seeking enforcement was not a Texas resident. Phoenix thus argues that, because Neon and CAI operated in Texas and sought to enforce a forum-selection clause selecting the U.K., the policy reasons behind forum-selection-clause enforcement were not met. We disagree. The Texas Supreme Court has recently enforced a forum-selection clause even when the defendant seeking enforcement was a Texas resident that had been sued in the county of its principal place of business. *See In re Automated Collection Techs., Inc.*, 156 S.W.3d at 558, 560. Moreover, the fact that the defendant is a Texas resident does not trump the contractual agreement to litigate in a particular place or necessarily make that agreement violative of public policy. This result obtains because of the policy supporting the enforcement of forum-selection clauses. As the United States Supreme Court has explained, "The expansion of American

---

18. *See, e.g., Barnett,* 38 S.W.3d at 202 (noting that forum-selection clause provided that suit upon contract be brought in "State of Virginia"); *Sterling Forest Assocs.,* 840 F.2d at 250, 251–52 (considering following forum-selection clause: "[T]he parties agree that in any dispute jurisdiction and venue shall be in California").

19. Alternatively, appellees' expert on English law, which the forum-selection clause provided was the applicable law for this dispute, opined that English courts would interpret the combination of the contract's English choice-of-law clause and the U.K. choice-of-forum clause as indicating the parties' intent that England be the required forum, rather than Scotland or Northern Ireland. The trial court was entitled to accept this expert's opinion (despite Phoenix's expert's opinion to the contrary), and, if the court did so, the forum-selection clause would not be vague for the reason that Phoenix argues.

business will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *M/S Bremen*, 407 U.S. at 9, 92 S.Ct. at 1912. The Court continued, "There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, ... should be given full effect.... The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id.*, 407 U.S. at 12–13, 92 S.Ct. at 1914–15.

Phoenix, which had a "heavy burden" to make a "strong showing" that this forum-selection clause should be set aside, presents no further argument in support of this point of error. *See M/S Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916; *In re AIU Ins. Co.*, 148 S.W.3d at 111. Neither does Phoenix explain how enforcement would be "unreasonable and unjust"; how the clause is "invalid for such reasons as fraud or overreaching"; or how litigating in the U.K. "will be so gravely difficult and inconvenient" that Phoenix "will ... be deprived of [its] day in court." *See M/S Bremen*, 407 U.S. at 15, 18, 92 S.Ct. at 1916, 1917. We hold that Phoenix has not carried its heavy burden. For similar reasons, we note that Phoenix would not have carried its burden under the Texas test, either. *See, e.g., My Café–CCC, Ltd.*, 107 S.W.3d at 865 (indicating that forum-selection clause will not bind court if interests of witnesses and public policy strongly favor that suit be maintained in forum other than one to which parties agreed).

### 6. Conclusion

Concluding that the forum-selection clause, which unambiguously designated the U.K. as the chosen forum, was neither invalid nor unenforceable for the reasons that Phoenix asserts, we overrule points of error one and four.

### Exclusion of Evidence

In point of error three, Phoenix argues that the trial court abused its discretion in excluding evidence that allegedly showed that "Texas is not only the appropriate, but also the convenient forum for this dispute." Specifically, Phoenix asserts that the documents that the court excluded—obtained from Neon's document production—revealed 17 individual "potential local Texas and U.S. witnesses knowledgeable of this case" and two "related [corporate] entities (grouped according to apparent company affiliation)." However, Phoenix's burden was to show how litigating in the U.K. "w[ould] be so gravely difficult and inconvenient" that Phoenix "w[ould] ... be deprived of [its] day in court." *See M/S Bremen*, 407 U.S. at 15, 18, 92 S.Ct. at 1916, 1917; *accord In re AIU Ins. Co.*, 148 S.W.3d at 113. Appellees had already presented evidence that "substantially all witnesses with knowledge of facts relevant to the Lawsuit reside in the United Kingdom"; that "[a]ll of the original sales documents relevant to Phoenix's allegations against Neon are located in the U.K."; and that "Phoenix conducted its business operations, if any, in the United Kingdom, where its headquarters are located." Additionally, Phoenix points to no evidence that it offered showing that these potential witnesses would have to travel to the U.K. or that their travel there would cause undue hardship or expense. Given the evidence before the trial court, and the heavy burden that the law placed on Phoenix to overcome the contractual choice of forum, we hold that, assuming without deciding that the trial court erred in excluding this evidence, that error would be harmless. *See* TEX.R.APP. P.

44.1(a); *see also Holeman,* 94 S.W.3d at 102 ("[A]lthough Holeman contended in the court below that numerous potential witnesses reside in the greater Houston area, he presented no evidence that all of these witnesses would be required to travel to Georgia, or that such travel would cause undue hardship or expense.").

We overrule point of error three.

### Enforcement by Non–Signatory Neon

 In point of error two, Phoenix argues that the trial court erred in implicitly concluding that Neon, which did not sign the Distribution Agreement, could enforce the agreement's forum-selection clause against Phoenix.

### A. Grounds in Neon's Motion to Dismiss

Neon relied below on three theories to support its position that it could enforce the forum-selection clause. One theory on which Neon relied exists in the forum-selection-clause context: "a valid forum selection clause governs all *transaction participants,* regardless of whether the participants were actual signatories to the contract." *See Accelerated Christian Educ., Inc.,* 925 S.W.2d at 75. Neon borrowed the other two theories, based on estoppel, from arbitration law: under "direct benefits estoppel," a non-signatory may enforce an arbitration agreement when the signatory plaintiff sues it seeking to derive a direct benefit from the contract containing the arbitration provision;[20] estoppel also applies when a signatory plaintiff sues both signatory and non-signatory defendants based on substantially interdependent and concerted misconduct by all defendants.[21] The trial court granted Neon's motion to dismiss without stating the basis of its ruling.

### B. Applicability of Arbitration Law

We need address only the last theory on which Neon relied: that a non-signatory defendant may enforce an arbitration agreement against a signatory plaintiff when the plaintiff has sued signatory and non-signatory defendants based on substantially interdependent and concerted misconduct by all defendants. *See Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding, no pet.) (combined appeal and mandamus proceeding). Phoenix raises only one appellate challenge to the trial court's implicit determination that this estoppel theory allowed Neon to enforce the forum-selection clause: that arbitration authority, and thus the estoppel ground on which Neon relied under that authority, does not apply. Phoenix does not assert a contingent appellate challenge that, even if arbitration authority applies by analogy, Phoenix did not allege facts constituting substantially interdependent and concerted misconduct between CAI and Neon.[22] Accordingly,

---

**20.** *See In re Kellogg Brown & Root,* 166 S.W.3d 732, 739 (Tex.2005).

**21.** *See Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding, no pet.) (combined appeal and mandamus proceeding).

**22.** In fact, Phoenix does not appear to have asserted this "merits" ground below and so would arguably have waived it even had Phoenix raised an appellate challenge. *See*

TEX.R.APP. P. 33.1(a)(1). Furthermore, during that portion of his oral argument concerning arbitration authority, Phoenix's counsel relied on the non-applicability of arbitration authority and conceded that Phoenix and CAI had committed the substantially interdependent and concerted misconduct that arbitration law required for a non-signatory to enforce an arbitration agreement under a theory of equitable estoppel. Phoenix in essence reaffirmed this concession in its post-argument letter brief.

we limit our discussion to whether arbitration authority, and thus this estoppel theory, apply by analogy to forum-selection clauses, without reaching the merits of that estoppel theory. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error.").

The United States Supreme Court has indicated that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). Likewise, the Texas Supreme Court has described an arbitration agreement as "another type of forum-selection clause"; has stated that it "see[s] no meaningful distinction between this type of forum-selection clause and arbitration clauses"; and has concluded that the law concerning waiver, and whether an adequate remedy by appeal exists applicable to arbitration agreements, also applies, by analogy, to the same matters in the context of forum-selection clauses. *See In re AIU Ins.,* 148 S.W.3d at 116, 121; *see also In re Automated Techs., Inc.,* 156 S.W.3d at 559 (noting that *In re AIU Insurance* court, in considering whether right to rely on forum-selection clause had been waived, "relied on cases concerning waiver in the arbitration context, which we found to be analogous."). The Fifth Circuit Court of Appeals, likewise, has concluded that law allowing an arbitration clause to be invalidated because of fraud or overreaching applies by analogy to forum-selection clauses because arbitration clauses are a sub-set of forum-selection clauses in general. *Haynsworth v. The Corp.,* 121 F.3d 956, 963 (5th Cir.1997).

We see no reason that these courts would not also apply arbitration law's two equitable-estoppel theories for enforcement by a non-signatory to forum-selection clauses. Indeed, the federal District Court for the Northern District of Texas has concluded, in an unpublished opinion, that arbitration law's two equitable-estoppel theories for enforcement by a non-signatory apply to forum-selection clauses because the two clauses are similar—although, there, admittedly, the court also relied on the fact that the parties agreed that arbitration law was analogous. *See Vartec Telecom, Inc. v. BCE, Inc.,* No. 3:02–CV–2585–M, 2003 WL 22364302, at *2 (N.D.Tex. Oct. 9, 2003) (not designated for publication).

Phoenix relies on dictum in *Accelerated Christian Education, Inc.* for the contrary position. *See* 925 S.W.2d at 75 n. 12. In *Accelerated Christian Education, Inc.,* the Dallas Court of Appeals—rejecting, in dictum, reliance on arbitration authority—considered whether the non-signatory defendant in that case could enforce a forum-selection clause against the signatory plaintiff. *Id.* at 75 & 75 n. 12. The *Accelerated Christian Education, Inc.* court rejected the argument of the plaintiff, who was opposing the forum-selection clause's enforcement, that two arbitration cases in which courts had indicated that a non-signatory party's claims could not be compelled to arbitration was analogous. *Id.* at 75 n. 12 (citing *Prudential–Bache Sec., Inc. v. Garza,* 848 S.W.2d 803, 807 (Tex. App.-Corpus Christi 1993, no writ) and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Longoria,* 783 S.W.2d 229, 231 (Tex. App.-Corpus Christi 1989, no writ)). Although arbitration clauses are a sub-category of forum-selection clauses generally, the *Accelerated Christian Education, Inc.* court reasoned that "an arbitration clause, unlike a forum-selection clause, completely deprives the parties of *any* judicial forum

for their complaints. Because a forum selection clause only specifies the judicial forum in which the parties may litigate their complaints, we do not find *Garza* and *Longoria* controlling." *Id.* (emphasis in original). That is, *Accelerated Christian Education, Inc.* appears to imply that determining whether a non-signatory may enforce an arbitration agreement may, under some circumstances, be a more narrow determination than it would be for forum-selection clauses.[23] *See id.*

We have the opposite situation and use of arbitration authority in this case, however. Here, a party defendant and *proponent* of the forum-selection clause's enforcement relies on arbitration authority in which the courts indicated that equity *does* allow non-signatories to enforce arbitration agreements under certain circumstances. If the issue of non-signatory enforcement of arbitration agreements—which the *Accelerated Christian Education, Inc.* court implied might be the more restrictive determination—may be decided under equitable principles, then the same issue may also be decided under equitable principles in the context of forum-selection clauses. Moreover, as stated above, the Texas Supreme Court has stated that it sees no meaningful distinction between the two types of clauses. *See In re AIU Ins.*, 148 S.W.3d at 116, 121.

We hold that the arbitration-law equitable-estoppel theory that is the subject of this discussion applies to forum-selection clauses. Because Phoenix has not assigned error to the merits of whether it alleged that Neon and CAI committed the substantially interdependent and concerted misconduct that this theory requires, we overrule issue two.

**23.** We neither approve nor disapprove of this implication by the *Accelerated Christian Education, Inc.* court; we merely note the implication for purposes of addressing Phoenix's appellate challenge.