COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-216-CV

 

 

TINA ST. CLAIR                                                                  APPELLANT

 

                                                   V.

 

BROOKE FRANCHISE CORPORATION                                         APPELLEE

 

                                              ------------

 

           FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








The trial court granted
Appellee Brooke Franchise Corporation=s motion to dismiss the suit filed against it by Appellant Tina St.
Clair.  The motion alleged that Tina is
bound by the forum selection clause in a contract between Brooke Franchise
Corporation (ABFC@) and Tina=s
husband.  Because we hold that Tina is
not bound by the forum selection clause, we reverse the trial court=s order and remand this case for trial.

Facts
and Procedural History

On October 15, 2003, Tina=s husband, Tim St. Clair, and his business partner entered into a
written contract (Athe
Agreement@) to sell
their insurance agency to BFC.  The
Agreement consisted of eight pages containing the principal agreement between
the parties (the APrincipal
Agreement@) and
subsequent pages of addenda and exhibits. 
The Principal Agreement contained a mediation clause, an arbitration
clause, and a forum selection clause limiting jurisdiction and venue over any
disputes arising out of the Agreement to either Phillips County District Court
in Phillips County, Kansas, or the U.S. District Court having jurisdiction over
that county.

The Principal Agreement also
contained noncompete covenants in which Tim and his partner agreed not to
directly or indirectly engage in the business of selling insurance policies
within a fifty-mile radius of Richland Hills, Texas and Arlington, Texas, for
five years after the sale date.  Tim and
his partner also signed a separate addendum in which they agreed to be bound by
the noncompete covenants in the Principal Agreement.  Tina did not sign this addendum or the
Principal Agreement and was not listed as a party on either of them.








Tina did, however, sign a AConsent of Spouse,@ which appeared after the Principal Agreement and before the addenda
and exhibits.  The AConsent of Spouse@ reads as follows: 

                                      Consent of Spouse*

*Required
of individual sellers in Arizona, California, Idaho, Lousisiana, Nevada, New
Mexico, Texas, Washington and Wisconsin

 

I acknowledge that I have read the foregoing
Agreement and that I know its contents. 
I am aware that by its provisions my spouse agrees to sell all interest
in the assets described therein, including my community interest in them.  I hereby consent to the sale, approve of the
provisions of the Agreement, and agree that those assets and my interest in
them are subject to the provisions of the Agreement and that I will take no
action at any time to hinder operation of the Agreement on those assets or my
interest in them.

 

In June 2005, less than two
years after the sale of Tim=s insurance agency, Tina opened an insurance agency, leasing office
space for the business in Bedford, Texas. 
Tim began operating a mortgage lending business and occupying a portion
of the leased space for that purpose.

In August 2005, the St.
Clairs received a letter from BFC demanding that both Tina and Tim immediately
cease and desist from selling and writing insurance policies out of Tina=s office.  The letter also
demanded that the St. Clairs move Tina=s insurance business outside of the geographic noncompete area
specified in the Agreement.








On August 8, 2005, Tina filed
an action seeking, among other things, a declaration that she is not bound by
the noncompete provision, that the AConsent of Spouse@ merely acknowledges her potential community interest in the assets
being sold through the Agreement and her consent to the sale, and that neither
the AConsent of Spouse@ nor the Agreement is enforceable against her because neither is
supported by legal consideration.  Tina
also claimed intentional interference with business relations and requested
permanent injunctive relief prohibiting BFC from interfering with her business.

BFC filed its answer on
November 4, 2005, along with a motion to dismiss, which argued that Tina was
bound by the forum selection clause of the Principal Agreement.  The court held a hearing on the motion on
February 3, 2006, and subsequently entered an order granting the motion and
dismissing the case without prejudice to refiling the same causes of action in
Phillips County, Kansas.  This appeal followed.

Standard
of Review








We use a de novo standard of
review Ato the extent that our review involves contractual interpretation,@ such as interpretation of a forum‑selection clause.[2]  We review for abuse of discretion a trial
court=s determination of a motion to dismiss, including a motion based on a
forum selection clause.[3]  The scope of our review is limited to the
arguments raised in the motion to dismiss.[4]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[5]  A trial court abuses its discretion if it
misapplies the law to established facts,[6]
and a trial court=s erroneous
legal conclusion, even in an unsettled area of law, is an abuse of discretion.[7]

Analysis








Tina argues that she was not
a party to the Agreement and that she is not otherwise bound by the forum
selection clause.  BFC argues that Tina
is clearly a signatory to the Agreement, and that whether she is a signatory or
not she is bound by the Agreement because she accepted benefits in the form of
community funds.

Accordingly, we turn first to
whether Tina is a signatory to the Agreement. 
The Principal Agreement unambiguously states that it is Aby and between@ Tim and Tim=s business partner as sellers and BFC as buyer.  Tina is not listed in the Principal Agreement
as a seller or in any other capacity.  A
signature block at the end of the Principal Agreement bears the signature of
Tim and his business partner as Asellers@ and BFC as Apurchaser.@  Tina did not sign this page.  Addenda and exhibits to the Principal
Agreement begin on the next page.  Tina=s name and signature appear only on the AConsent of Spouse,@ placed after the signature page for the Principal Agreement and the
noncompete addenda signed by Tim and his business partner, and before the
exhibits and addenda.  Because Tina did
not sign the Principal Agreement, she is not a signatory to it.[8]








BFC appears to argue that
Tina is a signatory to an agreement in which she expressly agreed to be bound
by the Principal Agreement.  We must
therefore determine whether the AConsent of Spouse@ contains such an agreement.

The most basic policy of
contract law is the protection of the justified expectations of the parties.[9]  In construing a contract, we determine the
parties= true intentions as expressed in the contract by examining the entire
writing Ain an effort to harmonize and give effect to all the provisions of the
contract so that none will be rendered meaningless.@[10]  We should construe the
contract Afrom a
utilitarian standpoint bearing in mind the particular business activity sought
to be served@ and Aavoid when possible and proper a construction which is unreasonable,
inequitable, and oppressive.@[11]  We look first to the contract=s plain language Aunless the contract itself shows [the terms] to be used in a technical
or different sense,@[12] and we presume that the contracting parties Aintend every clause to have some effect.@[13]








By the plain language of the AConsent of Spouse,@ Tina agreed that the assets sold by her husband are bound by the
Agreement, and she agreed to the terms of the Principal Agreement so far as
they affect those assets.  In other
words, Tina agreed that the company=s assets were being purchased under the Agreement, and as far as she
had any interest in those assets, she was bound by the Principal Agreement and
could not later claim an interest in them. 
But nowhere did she agree that she herself was bound by the
Principal Agreement, including the noncompete language.[14]

BFC in its brief contends
that it is undisputed that Tina

$                  
AAcknowledged
she read the agreement@;

$                  
AKnew and
understood its content@;

$                  
AKnew
that her community interest in the agency assets were being sold under the
agreement@;

 

$                  
AConsented
to the sale of the agency assets under the terms of the agreement@;

 

$                  
AAgreed
that her interest in the agency assets were subject to the agreement provisions@; and

 

$                  
AAgreed
to take no action to hinder the operation of the agreement, including its
noncompetition provisions.@








 

Even taking the above as
true, BFC by its own interpretation of the AConsent of Spouse@ does not argue that Tina agreed that she would be bound or
subject to the Principal Agreement, only that her assets would be and
that she would not hinder the Principal Agreement=s operation on those assets. 
Tina=s arguments
parallel this interpretation.  Her brief
states, A[w]hile she may have approved [of] her husband selling his
insurance agency; approved her husband entering into a non-compete
agreement; approved her husband agreeing to certain ADR provisions; she
did not in any way agree to make herself a party to those provisions
(or, for that matter, any others contained in the Agreement).@  We agree with both parties
that Tina agreed to make her interest in the business assets bound by the
Principal Agreement.  But by the plain
language of the AConsent of
Spouse,@ she did not agree to more than that. 








Further, the AConsent of Spouse@ states that it is required to be signed in only nine named states,
and at Tina=s request we
take judicial notice of the fact that each listed state is a community property
state.[15]  This language supports the construction that
the AConsent of Spouse@ was intended by the parties only to address community property law
that might have interfered with the execution of the Agreement and to prevent
Tina from later disputing the effectiveness of the Agreement as to any
community property interest she may have had in her husband=s business assets.  Applying the
plain meaning of the AConsent of
Spouse@ language, bearing in mind the particular business activity sought to
be served by the AConsent of
Spouse@ and the Agreement as a whole, we avoid a construction that is
unreasonable, inequitable, and oppressive[16]
and hold that the AConsent of
Spouse@ does not bind Tina as a signatory to the Principal Agreement.  We sustain Tina=s first issue.








We next consider BFC=s argument that, even if Tina is not a signatory, she is bound by the
Principal Agreement because she accepted benefits from it.  BFC relies on In re Weekley Homes, L.P.
for the proposition that under Texas law, nonsignatories to a contract may
still be bound to the contract Aunder various legal principles.@[17]  Very little Texas case law
exists discussing whether a forum selection clause in an agreement can and
should be enforced against a nonsignatory.[18]  We agree with the First Court of Appeals that
arbitration law on this matter applies by analogy because an arbitration
agreement is a type of forum selection clause.[19]  As the Texas Supreme Court has stated, in
deciding whether to apply a forum selection clause, an arbitration agreement is
Aanother type of forum-selection clause,@ and it Asee[s] no
meaningful distinction between this type of forum-selection clause and
arbitration clauses.@[20]  We therefore can apply
arbitration law by analogy to determine whether Tina is bound by the Principal
Agreement because she accepted benefits from it.








The Texas Supreme Court has
noted six theories recognized by the federal courts in which a nonsignatory may
be bound to an arbitration agreement: A(1) incorporation by reference; (2) assumption; (3) agency; (4) alter
ego; (5) equitable estoppel, and (6) third‑party beneficiary.@[21]  BFC has raised only equitable
estoppel as a basis for enforcing the agreement against Tina as a nonsignatory.[22]  We review for abuse of discretion a trial
court=s decision to use the doctrine of equitable estoppel to compel
arbitration.[23]

BFC cites both federal and
Texas case law in support of its arguments. 
Federal courts Ahave been
hesitant to estop a nonsignatory seeking to avoid arbitration@ and have limited estoppel in that context to cases involving
nonsignatories who Aduring the
life of the contract, have embraced the contract,@ seeking to derive direct benefits from it, but then, Aduring litigation, attempt to repudiate the arbitration clause in the
contract.@[24]  This theory of estoppel is
referred to as Adirect
benefits estoppel.@[25]








The Texas Supreme Court has
stated that direct benefits estoppel applies under Texas law where a
nonsignatory seeks or obtains direct benefits from a contract in one of two
ways.  First, in In re FirstMerit,
Bank, the court held that Aa litigant who sues based on a contract subjects him or herself
to the contract=s terms.@[26]  The court in In re Kellogg
Brown & Root, Inc., defined what it meant by Ato sue >based on a
contract,=@ holding that Aa non‑signatory
should be compelled to arbitrate a claim only if it seeks, through
the claim, to derive a direct benefit from the contract containing the
arbitration provisions.@[27]  In resolving whether a
claimant by bringing suit seeks to derive a direct benefit from the contract,
the determination Aturns on the
substance of the claim, not artful pleading,@[28] and A[w]hile the
boundaries of direct‑benefits estoppel are not always clear, nonparties
generally must arbitrate claims if liability arises from a contract with an
arbitration clause, but not if liability arises from general obligations
imposed by law.@[29]








The Texas Supreme Court subsequently
held that direct benefits estoppel can also apply in circumstances other than
where benefits from a contract are sought through legal action.[30]  Specifically, the court held that a
nonsignatory who deliberately seeks or obtains substantial benefits from the
contract itself may be compelled to arbitrate claims against a signatory to the
contract.[31]  In determining whether a nonparty
deliberately sought or obtained substantial benefits from the contract, our
analysis Afocuses on
the nonparty=s conduct
during the performance of the contract.@[32]








In summary, to be compelled
to arbitrate, a nonsignatory must either (1) bring claims in a lawsuit that
seek direct benefits from a contract containing an arbitration clause, or (2)
deliberately seek and obtain substantial benefits from the contract itself outside
of litigation.[33]  Thus in this case, we could only enforce the
forum selection clause against Tina if by bringing her claims, she sought
direct benefits from the Agreement, determined by deciding whether liability on
her claims arises solely from the Agreement between Tim and BFC and must be
determined by reference to it,[34]
or if by her conduct during the life of the Agreement, she deliberately sought
or obtained substantial benefits from the Agreement itself.[35]
 BFC argues only the second application
of direct benefits estoppel, and we therefore limit our analysis to consider
only that issue.[36]

Applying Weekley, we
look to Tina=s conduct
during the performance of the contract. 
In Weekley, the nonsignatory not only accepted direct
benefits under the contract, she consistently and knowingly insisted that
others treat her as a party:[37]  she negotiated directly with Weekley, signed
a letter of intent as one of the Apurchasers@; directed
how Weekley should construct some of the features of the home; Arepeatedly demanded extensive repairs of >our home=@; Apersonally
requested and received financial reimbursements for expenses >I incurred= while those
repairs were made@; and Aconducted settlement negotiations with Weekley.@[38] 








Unlike the nonsignatory in Weekley,
however, Tina took no part in any negotiations with BFC, never signed a letter
of intent or any other document leading up to the sale of the business, never
handled any matters in connection with the sale, and never attempted to resolve
any problems relating to the Principal Agreement after the sale prior to this
litigation.  The record shows that Tina
has never insisted, knowingly or otherwise, on being treated as a party to the
Principal Agreement.  Accordingly, we
hold that Tina did not deliberately seek or obtain benefits from the contract,
substantial or otherwise. 

BFC cites two federal cases
for its argument that the increase in the community estate causes Tina to be
bound by the Principal Agreement:  In
re VMS Limted Partnership Securities Litigation[39]
and American Bureau of Shipping v. Tencara Shipyard S.P.A.[40]  Neither In re VMS or American
Bureau of Shipping, as federal cases, are determinative of our holding;
this court may rely on federal case law as persuasive authority, but we are not
bound by it.[41]  Further, neither case cited by BFC applied
estoppel on the grounds of an increase in the community estate, and the facts
in both cases make them distinguishable.








In In re VMS, a wife
was held to be bound to the arbitration provision in an investment services
contract signed only by her husband.[42]  The wife in that case had directly accepted
the services provided under the contractCand those services affected not only securities owned by both the
husband and wife but also securities owned only by the wife.[43]  The contract at issue in this case did not
affect any assets owned by Tina in any capacity other than to the extent of her
community property interest, and she accepted no services under the
contract.  She merely agreed not to argue
in the future that the sale was invalid because it included any of her
community property interest.








In American Bureau of
Shipping, nonsignatory ship owners contracted with a shipbuilder to provide
a racing yacht, and the contract specified that the yacht would be Aclassed according >[t]o the quality standards and norms permitting approval of=@ a certain ship classification organization.[44]  To obtain such a classification, the
shipbuilder then contracted with the classification organization.[45]  The benefits received by the nonsignatories
(the owners) because of this contract were direct and substantial:  the owners were able to obtain lower
insurance rates and the ability to sail under the French flag, benefits sought
by the owners and which they likely could not have obtained without the
shipbuilder=s contract
with the classification organization.[46]  In the instant case, Tina received no similar
direct and substantial benefit.  There
was no showing that the contract between Tim and BFC enabled Tina to do
anything she otherwise could not have done or that it gave her any benefit that
she had sought. 

BFC argues that the facts
that the proceeds from the sale were deposited into a bank account on which
both Tina and Tim are signatories, and that this account was used by the St.
Clairs to pay their mortgage, credit card bills, and car payments, show enough
of a benefit to Tina to bind her to the contract.  To apply BFC=s reasoning would mean that any increase in the community estate would
always bind a nonsignatory spouse to any contract, including a  noncompete agreement.  We do not believe that the law of equity
requires us to stretch the doctrine of estoppel that far.[47]








We hold that any increase in
the community estate of the St. Clairs resulting from the sale of Tim=s business did not provide to Tina a benefit that was so direct and
substantial that the doctrine of estoppel applies and binds her to the
Principal Agreement.[48]  Consequently, we also hold that Tina is not
bound by the forum selection clause. 
Accordingly, we further hold that the trial court abused its discretion
by granting BFC=s motion to
dismiss based on the Principal Agreement=s forum selection clause.  We
sustain Tina=s second issue
and do not reach her third issue contending that Texas law applies to the
determination of the enforceability of the noncompete provisions.[49]

Conclusion

Because we hold that the
trial court abused its discretion by granting BFC=s motion to dismiss based on the forum selection clause, we reverse
the trial court=s order
dismissing the case remand the case for trial.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL F:    DAUPHINOT, GARDNER,
and WALKER, JJ.

DELIVERED: 
April 12, 2007











[1]See Tex. R. App. P. 47.4.





[2]Phoenix
Network Techs. (Europe) Ltd. v. Neon Sys., Inc., 177
S.W.3d 605, 610 (Tex. App.CHouston [1st Dist.] 2005, no
pet.).





[3]Id.





[4]Mercure
Co., N.V. v. Rowland, 715 S.W.2d 677, 680‑81 (Tex. App.CHouston
[1st Dist.] 1986, writ ref=d n.r.e.); Huston v.
F.D.I.C., 663 S.W.2d 126, 129 (Tex. App.CEastland 1983, writ ref=d
n.r.e.); Country Cupboard, Inc. v. Texstar Corp., 570 S.W.2d 70,
75 (Tex. Civ. App.CDallas
1978, writ ref=d
n.r.e. ).





[5]Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).





[6]State
v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975); In re Talco‑Bogata
Consol. Indep. Sch. Dist. Bond Election, 994 S.W.2d 343, 347 (Tex. App.CTexarkana
1999, no pet.).





[7]Perry
v. Del Rio, 66 S.W.3d 239, 257 (Tex. 2001); Huie v.
DeShazo, 922 S.W.2d 920, 927-28 (Tex. 1996) (orig. proceeding).





[8]Black=s Law Dictionary (Bryan A. Garner ed., 8th ed.
2004) (defining Asignatory@ as a
Aparty
that signs a document, personally or through an agent, and thereby
becomes a party to an agreement@) (emphasis added).





[9]DeSantis
v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990), cert.
denied, 498 U.S. 1048 (1991).





[10]Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005). 





[11]Reilly
v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987).





[12]Valence
Operating Co., 164 S.W.3d at 662; see also Gen. Am.
Indem. Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660, 661 (1960).





[13]Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).





[14]But
see Kirby Highland Lakes Surgery Center, L.L.P. v. Kirby,
183 S.W.3d 891, 902 (Tex. App.CAustin 2006, no pet.) (noting
in factual background that wife signed a document in which she expressly joined
in the execution and delivery of the main agreement signed by her husband).





[15]See Tex. R. Evid. 202; see also Ariz. Rev. Stat. '
25.211 (2000); Cal. Fam. Code ' 760 (Deering 2006); Idaho Code Ann. ' 32-906 (2006); La. Civ. Code Ann. art. 2335 (Supp.
2007); Nev.  Rev. 
Stat. '
123.220 (2005); N.M. Stat. ' 40‑3‑12
(LexisNexis 1999); Tex. Fam. Code Ann.
'
3.002 (Vernon 2006); Wash. Rev. Code '
26.16.030 (West 2005); Wis. Stat. ''
766.001(2), 766.31(1) (2001 & Supp. 2006).





[16]See Reilly,
727 S.W.2d at 530.





[17]180
S.W.3d 127, 131 (Tex. 2005).





[18]Compare
Phoenix Network, 177 S.W.3d at 605 (applying arbitration law to
question of whether to enforce a forum selection clause), with Accelerated
Christian Educ. Inc. v. Oracle Corp., 925 S.W.2d 66, 75 n.12 (Tex. App.CDallas
1996, no writ) (finding no Texas cases directly addressing the issue of whether
a forum selection clause can apply to a nonsignatory and stating that two cases
cited by the appellant were not controlling because both addressed the
applicability of an arbitration clause).





[19]See
Phoenix Network, 177 S.W.3d at 622-25; see also In re
AIU Ins. Co., 148 S.W.3d 109, 115 (Tex. 2004).





[20]Phoenix
Network, 177 S.W.3d at 623; see also In re AIU Ins. Co., 148
S.W.3d at 115.





[21]In re
Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex.
2005). 





[22]But
see Kirby, 183 S.W.3d at 902-03 (applying incorporation by
reference in a case with similar but distinguishable facts).





[23]Tex.
Enters., Inc. v. Arnold Oil Co., 59 S.W.3d 244, 249 (Tex. App.CSan
Antonio 2001, no pet.); Skyleasing, LLC v. Tejas Avco Inc., No.
14‑05‑00212‑CV, 2006 WL 2290852, at *3 (Tex. App.CHouston
[14th Dist.] Aug, 10, 2006, no pet.).





[24]InterGen
N.V. v. Grina, 344 F.3d 134, 145-46 (1st Cir. 2003).





[25]Kellogg, 166
S.W.3d at 739.





[26]52
S.W.3d 749, 755 (Tex. 2001) (emphasis added).





[27]Kellogg, 166
S.W.3d at 741 (emphasis added); see also Weekley, 180 S.W.3d at 132.





[28]Weekley, 180
S.W.3d at 131-32.





[29]In re
Vesta Ins. Group, Inc., 192 S.W.3d 759, 761 (Tex. 2006).





[30]Weekley, 180
S.W.3d at 132-33.





[31]Id.





[32]Id.





[33]Id.





[34]See
id. at 131-32





[35]See
id. at 132-33.





[36]See Tex. R. App. P. 47.1.





[37]Weekley, 180
S.W.3d at 135.





[38]Id. at
133.





[39]26
F.3d 50 (7th Cir. 1994).





[40]170
F.3d 349 (2d Cir. 1999).





[41]Ulico
Cas. Co. v. Allied Pilots Ass=n, 187
S.W.3d 91, 107 (Tex. App.CFort
Worth 2005, pet. granted).





[42]26
F.3d at 52.





[43]Id.





[44]170
F.3d at 351.





[45]Id.





[46]Id. at
353.





[47]See
Weekley, 180 S.W.3d at 129, 134-35 (stating that nonparties are bound by an
arbitration clause when equity binds them to the contract generally, and
whether estoppel applies depends on the facts).





[48]See
id. at 134 (stating that estoppel does not apply when benefits received
are indirect or insubstantial).





[49]See Tex. R. App. P. 47.1.